No. 2-09-0102    Filed: 12-16-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06--CF--581 |
| JERRY N. CLARK, a/k/a Jerry Clarke, | ) ) | Honorable Ronald J. White, |
| Defendant-Appellant. | ) | Judge, Presiding |

PRESIDING JUSTICE JORGENSEN delivered the opinion of the court:

Following a bench trial, the court found defendant, Jerry N. Clark, guilty of possession with intent to deliver between 1 and 15 grams of heroin (720 ILCS 570/401(c)(1) (West 2006)) within 1,000 feet of a public park (720 ILCS 570/407(b)(1) (West 2006)), a Class X felony. The trial court initially sentenced Clark to a 40-year, extended-term sentence but, following a motion-to-reconsider hearing, reduced the sentence to 25 years' imprisonment. Clark appeals, alleging: (1) insufficient evidence; (2) a due process violation; and (3) ineffective assistance of counsel during the plea negotiation process. We affirm.

I. BACKGROUND

On February 17, 2006, in what defense counsel later characterized as a preliminary hearing, defendant appeared before Judge Fernando L. Englesma. Judge Englesma informed him of the

charges against him and the potential sentences. Regarding count I, on which defendant ultimately was convicted, Judge Englesma stated:

"I have [count I], a criminal complaint charging that on February 10 *** [defendant] within 1,000 [feet] of [Bressler Park], knowingly and unlawfully possessed, with the intent to deliver, in violation of [section 401(c)(1)], one gram or more but less than 15 grams of a substance containing heroin ***.

It's charged as a class X felony, punishable anywhere from six to thirty years in the Department of Corrections, six to sixty years if extended term applies ***."

Regarding count II, which the State ultimately dismissed following the close of evidence at trial, Judge Englesma stated:

"In [count II], there is a criminal complaint charging that *** [defendant] *** within 1,000 feet of [Bressler Park], knowingly and unlawfully delivered to Tyrone Williams less than 10 grams of a substance containing heroin, *** a Class 1 felony punishable from four to fifteen years ***, four to thirty years if extended term applies."

Judge Englesma asked defendant if he understood the charges and defendant replied "yes." Judge Englesma then asked, "Plea of not guilty?" and defense counsel answered "yes." Judge Englesma then directed the case to a new courtroom and set the next hearing for March 31, 2006. Although it was not mentioned at the preliminary hearing, defendant also was charged with unlawful use of a weapon, a Class X felony, in case No. 05–CF–2827.

On March 31, 2006, in what defense counsel later characterized as an arraignment, defendant appeared before Judge Edward Prochaska. Judge Prochaska stated, "On [counts I and II], *** I have

an indictment for you." Defense counsel replied, "Receive and acknowledge, your Honor, waive a reading, enter a plea of not guilty."

On September 6, 2006, defense counsel asked the trial court for a Rule 402 conference. 177 Ill. 2d R. 402. On December 7, 2006, approximately one month before the case was set to go to trial, the court held a Rule 402 conference. The court first addressed defendant regarding the matter:

"Your attorney *** is asking that, and the prosecutor also is asking, that we do what we call a 402 conference. It's from Supreme Court Rule 402. What your attorney is asking on your behalf and the prosecutor, that we go back in chambers, and you have a number of cases pending, and we're going to try to resolve it.

They'll tell me about the cases, tell me about your background, tell me about your history, and we're going to try to resolve that. Do you have any objection if we do that?" The defendant stated that he did not object.

Following the Rule 402 conference and following a subsequent, private discussion with defendant, defense counsel stated, "I've talked with [defendant], and I've uncovered a bit of recalcitrance, so I left him to stew about it. I pointed out all the advantages and disadvantages of his situation, and he can think about it." Defense counsel did not state on the record what, exactly, he told defendant regarding the State's plea offer. The court stated, "If there's no agreement, we'll be ready to try the case on January 8." The parties did not reach an agreement.

At a hearing on January 8, 2010, defense counsel answered ready for trial and indicated that defendant would be electing a bench trial. The trial court accepted defendant's jury waiver. There was no discussion regarding defendant's potential sentences.

On January 16, 2007, the case proceeded to a bench trial. Several officers testified to the following facts regarding a hand-to-hand drug transaction and defendant's subsequent flight and ultimate arrest. During the early morning hours of February 10, 2006, several Rockford police officers were involved in a narcotics investigation, the target of which was a known drug dealer, Tyrone Williams. The officers anticipated that Williams would sell illegal drugs to a hired informant. However, presumably before Williams interacted with the informant, the officers observed him accept what they took to be illegal drugs from defendant in a hand-to-hand transaction. The hand-to-hand transaction took place on the corner of Auburn and Furman Streets. Although minimal evidence was disclosed at trial regarding the hand-to-hand transaction, count II alleged that defendant delivered heroin to Williams.

Rockford police detective Robert Reffet was stationed close to the Auburn and Furman intersection and witnessed the hand-to-hand transaction from the nearby vantage point of Wayne's Feed Store. Rockford police detective Richard Gambini received word of the transaction from Reffet and drove to the intersection. Apparently upon seeing Gambini, defendant began to run south down Furman Street. Williams had already departed to the north, toward the Central Park Tap. Rockford police sergeant Mark Welsh pulled across a sidewalk in front of defendant in an attempt to stop defendant's escape. At that point, Gambini saw defendant throw something to the ground. Welsh and several other officers physically struggled with defendant before arresting him. While Welsh and the other officers struggled with defendant, Gambini searched for the item that he saw defendant discard. Gambini found a bag containing 24 small Ziplock baggies, each of which contained a substance later determined to be heroin. Additionally, the officers recovered from defendant's person $163 in cash and a cellular telephone. Welsh testified that, in Rockford, heroin was typically sold for

$100 per gram, in packets ranging from 0.1 grams to 0.5 grams, and that street level dealers typically used cellular telephones to communicate with their clients and their sources.

At one point in the trial, as relevant to defendant's due process claim on appeal, defense counsel sought to establish whether defendant was right- or left-handed. The purpose of this seems to have been to show that it may have been awkward for defendant to discard the plastic baggies in the manner described by police. In order to demonstrate his handedness, defense counsel requested that defendant's handcuffs be temporarily removed so that he could write his name with both his right and his left hand. This is the only reference in the record that defendant was shackled during his trial.

After defendant's arrest, Welsh returned to the scene to measure the distance from the spot of arrest to Bressler Park. As is critical to defendant's sufficiency claim on appeal, Welsh testified:

"A. I wanted to use a rolling measure tape to determine the exact distance from the location where we arrested the defendant to *** Bressler *** Park, [a public park].

* * *

Q. Okay. And what was that distance?

A. It was about 920 feet." (Emphasis added.)

On cross-examination, defense counsel elicited from Welsh that, in his written police report, he had stated that he began his measurement from the corner of Auburn and Furman Streets, not, as he testified at trial, from the 100 or so feet south of that intersection on Furman where defendant had been arrested.

At closing argument, defense counsel again noted the inconsistency between Welsh's written police report and his testimony at trial regarding the starting position of his measurement. The State responded that the inconsistency was immaterial.

The State then informed the trial court that it would be dismissing count II, regarding the (unconfirmed) substance that defendant delivered to Williams before he fled from police and dropped the packets of heroin that he was charged in count I with possessing with intent to deliver .

In ruling, the trial court recited certain facts of the case. The trial court noted the discrepancy between Welsh's police report and Welsh's testimony and stated that it would make its ruling based on the measurement to Bressler Park from the spot of the arrest, not from the spot of the hand-to-hand transaction. In recounting the various landmarks to which the officers had testified in describing the location of the crime (i.e., Wayne's Feed Store, the intersection of Auburn and Furman Streets, and Central Park Tap), the trial court stated that it was "familiar with that location." Based on the evidence presented, the trial court found defendant guilty of count I, possession with intent to deliver within 1,000 feet of a public park. The court later sentenced defendant to 40 years' imprisonment, finding that defendant's criminal history qualified him for extended-term sentencing.

On August 2, 2007, defendant, still represented by the same attorney, moved to reconsider his sentence. On January 17, 2008, at a status hearing prior to the hearing on the motion to reconsider the sentence, defense counsel requested transcripts of the earlier proceedings because he had some concern as to whether defendant had ever been admonished concerning the possibility of extended-term sentencing. On March 20, 2008, at another status hearing, defense counsel again raised the issue of defendant's apparent lack of awareness that he would be subject to an extended-term sentence, referencing in particular the Rule 402 conference:

"COUNSEL: If we could just sit down, I might remind the Court of its comments following *** that 402 conference.

THE COURT: You understand a 402 conference is an attempt to resolve the issues. And the defendant chose not to resolve it in that manner. The defendant had a right to a jury trial and he waived that right to a jury trial and had a bench trial, and that's the purpose of a 402 conference. An agreement couldn't be reached.

\* \* \*

COUNSEL: \*\*\* Now, the Court should understand that when these conferences do take place the Court--put it this way, the judge; let's not be so impersonal. The judge will frequently say I think this is a good offer; I think this is a bad offer and here is what I would do in the event of; that such a conversation did take place. I advised the defendant of what took--of the conversations.

THE COURT: Based on a plea agreement?

COUNSEL: No, based upon the sum total of that conference. And the defendant made his decision as to whether or not he would accept a recommendation or that he would pursue his fortunes at trial.

I am just asking for the opportunity to and in a private setting to remind the Court of what it said. There is no record of what the Court said. I am an officer of this court. I am not going to misrepresent anything which I believe I heard from you. And I think that in all fairness this should take place.

THE COURT: That's up to [the State].

\* \* \*

COUNSEL: *** Certain representations were made; certain things were said. I have a pretty good recollection of what was said and I will just simply file an addendum indicating what took place at--

THE COURT: I'm sorry, an addendum for what?

COUNSEL: For the purposes of informing an appellate court just what the defendant's state of mind was with respect to the possibility of his sentencing if he would have proceeded to trial. I appreciate the fact that the Court has a pained expression on its face.

THE COURT: I tell you, [Counsel], I am getting a little concerned in this respect. You have a motion to reconsider sentence. Now, I expect you to argue the motion to reconsider sentence. If those issues you wish to argue to this court so I can make a decision-- and this will be appealed, and I understand that.

But the appellate court is not going to hear any other arguments unless you present them here. ***

I do not recall what happened in the 402 conference. I have thousands of cases, and I go back there and attempt to resolve cases. If the cases are not resolved by plea agreement, I never make any promises as to what my sentence will be. ***

COUNSEL: *** I will just simply state for the record what my beliefs and understandings were in connection with the 402 conference and with what I told the defendant following that conference.

Because the defendant has told me that if he would have known he faced a 40-year sentence by going to trial, he would have just given up and taken the recommendations then made at the 402 conference.

* * *

THE STATE: [The plea] offer was to [counts I and II] and 05--CF--2827 [the unrelated Class X offense that was still pending as of the presentencing report in the instant case]; pleas to both for 12 years DOC [6 years on each].

THE COURT: Was that the offer that was communicated to your client?

COUNSEL: That offer was communicated. That was the statement made in the 402 conference.

THE COURT: And the Court said the Court would accept it.

COUNSEL: The Court said it would accept it.

THE COURT: Now, let me ask you: Did you communicate that with your client?

COUNSEL: Yes, sir.

THE COURT: Did your client say he didn't wish to do that?

COUNSEL: He said he did not wish to do that. He was--

* * *

COUNSEL: *** [A]n additional statement that was made at that 402 conference which was passed on to the defendant. And his decision was predicated upon all of these statements which were made at the 402 conference. That's why I feel squeamish. *** [T]here are certain things that are kept confidential. I certainly would want to respect the sanctity of a 402 conference.

THE COURT: Well, state on the record what information you have so we can get it in the record and you can allege it in [an amended motion to reconsider the sentence].

COUNSEL: <u>That the Court after *** recommending that offer, also stated[,] 'If he is found guilty, I would impose a 15-year sentence.'</u> That was communicated--

THE COURT: I don't recall that. [State], do you recall that?

THE STATE: There was additional discussion at the 402 conference.

* * *

[And] if the court wants to know, my notes indicate that the Court said, 'If trial, 10 to 15 on first conviction, then more on the second class X.' Then my notes state that I indicated in the 402 that offer will be revoked on next court date ***." (Emphases added.)

On April 24, 2008, defendant filed an amended motion to reconsider his sentence. The amended motion did not specify the trial court's alleged statements at the Rule 402 conference and, as to the points at issue on appeal, it was substantively similar to the prior motion. The amended motion essentially alleged that: (1) defendant was <u>not eligible</u> for an extended-term sentence because his prior Class X convictions and sentences served occurred more than 10 years ago and because the State failed to establish that his prior conviction for involuntary manslaughter involved the death of more than one person; and (2) defendant was <u>not aware</u> that such a lengthy prison term was a possibility until after the trial, especially "in light of facts brought out and opinions expressed at a pretrial conference held pursuant to Supreme Court Rule 402."

On December 30, 2008, at the hearing on the amended motion to reconsider the sentence, defense counsel argued before Judge Ronald J. White as set forth above that defendant was <u>not eligible</u> for an extended-term sentence. Defense counsel argued alternatively that, even if defendant were eligible for an extended-term sentence, both he and defendant were <u>unaware</u> that an extended-

term sentence was even a possibility. In regard to the "facts brought out and opinions expressed at a pretrial conference held pursuant to Supreme Court Rule 402," defense counsel stated:

"I wish to apologize if I am--shall we say, invading the--the privileged status of these 402 conferences; but when we had the conference I was led--the State made an offer, which frankly, the defendant was quite foolish for refusing.

The defendant at that time was charged with three felony cases. Two of them involved controlled substances: The instant case and case No. 05--CF--2827. Both of those cases were Class X cases. The defendant was offered six years on each, and he should have accepted; but [good] judgment doesn't always rule in these instances.

However, in the course of that conference, the Court did state that if he did not accept the offer and he was found guilty, he would be sentenced to fifteen years.

Now, I brought this information to the defendant. The defendant assumed that, well, what did he have to lose by going to trial. Would be just another three years.

It is quite possible that perhaps the Court meant fifteen years on each. We don't know just what these interpretations are. My own belief was that it was fifteen years for the total. But again, that's my belief.

In any event, the defendant elected to go to trial based upon this misperception. ***

* * *

But again, just dealing with the defendant, he acted through misperceptions. He should have taken the offer. He did not." (Emphasis added.)

Defense counsel further stated that defendant was never advised of the possibility of extended-term sentencing until the actual sentencing hearing. Defense counsel noted that, "at the initial

arraignment of this defendant, there was nothing said about the possibility of the defendant being eligible for extended term sentencing if found guilty."

As to whether defendant had been advised before sentencing of the possibility of an extended-term sentence, the State noted that defendant waived a reading of rights and penalties at the arraignment. Defense counsel responded that he waived only an "actual reading of the indictment," which would have specified the particular offenses charged and defendant's alleged acts, and did not waive any right to be informed of "the significance of the charge" and the "likely sentencing proportions."

Defense counsel concluded, "Given the fact that the defendant and his attorney were not aware of the possibility, we ask this Court to confine its sentencing to what is required for a [C]lass X offense; namely, six to thirty years."

The trial court rejected defendant's argument that the extended-term sentence was somehow unfair because he had previously been unaware of the possibility. However, the trial court agreed that defendant was not eligible for the extended-term sentence because the date of his last felony offense was just outside the 10-year mark. The court reduced defendant's sentence from 40 to 25 years' imprisonment, reiterating that defendant had committed a serious offense and had "an extensive, extremely violent criminal history."

Additionally, regarding whether defense counsel "waived a reading" of defendant's rights and penalties, the trial court agreed with the State. The court explained that, in receiving the bill of indictment yet waiving a formal reading of it, defense counsel essentially presented to the court that he had already informed defendant of the potential sentences.

## II. ANALYSIS

Defendant raises three arguments on appeal: (1) insufficient evidence of the park's proximity; (2) a due process violation; and (3) ineffective assistance of counsel during the plea negotiation process. Although we find defendant's ineffective-assistance claim to be the most compelling, we address it only after establishing that defendant otherwise received a fair trial.

## A. Sufficiency

Defendant challenges the sufficiency of the evidence. Typically, where a defendant argues that the evidence was insufficient to convict, we must determine whether, after considering all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. People v. Siguenza-Brito, 235 Ill. 2d 213, 224 (2009).

Defendant appears to concede on appeal that the State proved that he possessed the 24 packets of heroin that the police observed him discard at the place of his arrest. However, defendant argues that the State failed to establish beyond a reasonable doubt that defendant intended to deliver that heroin while within 1,000 feet of Bressler Park. Specifically, defendant contends that the State "failed to present any evidence that, prior to his arrest and before being chased by police, [he] was within 1,000 feet of Bressler Park." Defendant reasons that, in light of this alleged shortcoming on the part of the State, "it is completely reasonable to assume that [he] ran within 1,000 feet of Bressler Park while being chased by the police, and, therefore, without intent to deliver." Defendant requests that his offense be lessened to simple possession and his case remanded for resentencing.

We begin by noting that the State clearly set forth sufficient evidence of defendant's intent to deliver (at some point). Defendant carried 24 individual packets of heroin--an amount and packaging technique highly indicative of one's intent to deliver rather than to personally consume. See, e.g.,

People v. Robinson, 167 Ill. 2d 397, 408 (1995) (factors considered probative of intent to deliver include whether the quantity of the controlled substance in the defendant's possession is too large to be viewed as being for individual consumption and the manner in which the substance is packaged). Hence, defendant overstates his requested remedy by requesting that his offense be lessened to simple possession. The most defendant can reasonably ask this court to consider is whether his offense should be changed to possession with intent to deliver, but not within 1,000 feet of a public park.

Defendant states that, once chased by the police, his only intent was to elude them, not to deliver heroin. To some extent, we see the logic behind defendant's argument. If, hypothetically, a defendant, aware of the Class X status of delivering within 1,000 feet of a public park, purposely elected a delivery spot outside that range and, upon temporarily suspending his intent to deliver, was subsequently "herded" by the police into a 1,000-foot radius of the park, it might be unfair to charge that defendant with intent to deliver within 1,000 feet of the park. The question before this court thus becomes whether defendant was within 1,000 feet of the park while in possession of the 24 ready-to-deliver packets of heroin before he was chased by the police and, therefore, arguably suspended his intent to deliver.[1]

The State submits for the first time on appeal a Google Map of the area surrounding the Auburn and Furman intersection (see http://www.maps.google.com (last visited April 1, 2010)), asking that this court take judicial notice that Bressler Park is north of the Auburn and Furman

---

[1]We note some irony in defendant's argument that, because he may have come within 1,000 feet of the park after arguably abandoning his intent to deliver, it would be unfair to subject his crime to Class X status where he came within 1,000 feet of the park in the process of committing another crime--eluding police or resisting arrest.

intersection. In response, defendant filed a motion to strike, which we took with the case. For the reasons set forth below, we deny the motion to strike.

Establishing that the park is north of the intersection benefits the State because, if the park is north of the intersection, defendant would have been running <u>away</u> from the park when he ran south of the intersection (as both sides agree he did). If defendant ran away from the park yet was still within 1,000 feet of its boundaries upon arrest, then the difference in distance between the spot of the hand-to-hand transaction and the spot of the arrest would be meaningless, as both would be within 1,000 feet of the park.

We agree with the State that the fact that the park is, generally, north of a certain intersection is the type of fact that a court may judicially notice. An appellate court may take judicial notice of a fact that the trial court did not. 18 Ill. L. & and Prac. Evidence §2 (2010), citing <u>Island Lake Water Co. v. Illinois Commerce Comm'n</u>, 65 Ill. App. 3d 853, 857 (1978). A judicially noticed fact must be one not subject to reasonable dispute, meaning that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. See 11 W. Schroeder, Illinois Practice §201:3(c) (2010), citing <u>Village of Catlin v. Tilton</u>, 281 Ill. 601, 602-03 (1917); see also Official Reports Advance Sheet No. 20 (October 6, 2010), R. 201, eff. January 1, 2011. While courts will take judicial notice of geographical facts such as the fact that a certain city is located within a certain county, they generally will not take judicial notice of the <u>precise</u> location of a single city lot or subdivision within city lines. 14A Ill. L. & Prac. <u>Criminal Law</u> §197 (1999). Given this, it would seem that taking judicial notice that Bressler Park is, simply, north of the Auburn and Furman intersection is exactly the sort of fact appropriate for judicial notice.

Moreover, case law supports the proposition that information acquired from mainstream Internet sites such as Map Quest and Google Maps is reliable enough to support a request for judicial notice. For example, in Hoskin v. Union Pacific R.R. Co., 365 Ill. App. 3d 1021, 1023-25 (2006), a civil case involving a defendant's motion to transfer venue on the ground of forum non conveniens, the defendant's identification of the residential locations of three witnesses was in the trial court record. The appellate court noted that the record did not support the defendant's implicit claim that transporting witnesses to Madison County for a trial would be significantly more burdensome than transporting them to Randolph County, the county to which the defendant sought to transfer the case. The appellate court, apparently on its own impetus and in support of its observation, searched Map Quest and determined that two of the three witnesses lived closer to Madison County than Randolph County. Hoskin, 365 Ill. App. 3d at 1024-25.

Similarly, in People v. Stiff, 391 Ill. App. 3d 494, 503-04 (2009), which the parties do not cite, the appellate court, also apparently on its own impetus, referenced Google Maps to show that the victim traveled approximately 295 feet from when he was set on fire to when he was able to make the statements at issue in the case. The court cited that relatively short distance, along with the severe pain the victim likely was feeling, in reasoning that it was "inconceivable" that the victim could have spent the time it took to get from point "A" to point "B" concocting a story and in ruling that the victim's statements should have been admitted under the "excited-utterance/spontaneous-declaration" exception to the rule against hearsay. Stiff, 391 Ill. App. 3d at 504.

Other jurisdictions have ruled consistently with Hoskin and Stiff. See, e.g., Warwick v. University of the Pacific, No. C 08--03904 CW (N.D. Cal. July 6, 2010) (the court, apparently on its own initiative, used Google Maps to take judicial notice of distance between Ukiah and San

Quentin for the purpose of providing context to the question of whether a parole officer was becoming too familiar with a parolee); Citizens for Peace in Space v. City of Colorado Springs, 477 F.3d 1212, 1219 (10th Cir. 2007) (a court may use mapping services, such as Google Maps, whose accuracy cannot reasonably be questioned, to take judicial notice of the (approximate) driving distance between two points referenced in the record).

However, introducing a fact for judicial notice on appeal, albeit by a means that is considered reasonably unquestionable (i.e., an image on a Google Map depicting Bressler Park to be, generally, north of the Auburn and Furman intersection), does not relieve the State of its burden to prove each element of the offense at trial. See, e.g., Concrete Surface Innovations, Inc. v. McCarty, No. 6:10-- cv--568--Orl--28GJK (M.D. Fla. May 13, 2010) (untimely submission, by the party bearing the burden of proof, of a Google Map showing a competitor's purported place of business to be within the 50-mile radius forbidden by a noncompete clause would not be considered). Therefore, we take judicial notice that the park is, generally, north of the intersection, but only for the purpose of understanding the statements made at trial by the witnesses and by the trial court.

In a criminal case, the State must prove each element of the offense beyond a reasonable doubt. See, e.g., People v. Lewis, 379 Ill. App. 3d 829, 831 (2008) (finding that, where the trial court found that the State had not proved the element of "intent to deliver," the defendant should have been sentenced on the lesser offense of possession). In a prosecution for intent to deliver a controlled substance within 1,000 feet of a public park, the State need not prove that the defendant was aware of his proximity to the park, but it must prove the proximity of the park. See People v. Pacheco, 281 Ill. App. 3d 179, 187-88 (1996).

Again, where a defendant argues that the evidence was insufficient to convict, we must determine whether, after considering all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. Siguenza-Brito, 235 Ill. 2d at 224. We therefore consider whether any rational trier of fact could have found that the State proved, at trial, that defendant intended to deliver the heroin while within 1,000 feet of the park.

We find that the State set forth sufficient evidence at trial that defendant remained within 1,000 feet of the park from the time he was first spotted to the time he was apprehended. Defendant does not dispute that the State sufficiently established that the hand-to-hand transaction took place on the corner of Auburn and Furman Streets. Williams departed north toward Central Park Tap. When defendant realized that police officers had witnessed the transaction, he ran south on Furman Street. Defendant was arrested on Furman Street, approximately 100 feet south of the intersection of Auburn and Furman Streets. Defense counsel asserted in closing argument that Welsh had provided inconsistent information by stating in his written report that he had measured the park to be 920 feet from the Auburn and Furman intersection but stating at trial that he had measured the park to be 920 feet from the spot of the arrest, just south of the Auburn and Furman intersection. The trial court was therefore aware of the controversy and, in recounting the various landmarks in the area surrounding the Auburn and Furman intersection, stated that it was "familiar with that location." Based on the trial court's statement, we infer that the trial court had resolved this factual issue, and we take it at its word that it was familiar with the area surrounding the intersection and understood that Bressler Park was north of the intersection. Given that the park is north of the

intersection of Auburn and Furman Streets, when defendant ran south on Furman Street, he ran away from the park and he still remained less than 1,000 feet from its boundaries at the time of his arrest.

Thus, we find that the State sufficiently established that defendant intended to deliver heroin within 1,000 feet of a public park.

### B. Due Process

Defendant argues that, because he was handcuffed during his bench trial and the trial court had not held a Boose hearing, his due process rights were violated. See People v. Boose, 66 Ill. 2d 261 (1977). Defendant requests that we reverse his conviction and remand for a new trial. We reject defendant's argument.

In Boose, the court held that, regardless of whether it is a bench or a jury trial, the accused may not be shackled during trial absent a showing of manifest need. Boose, 66 Ill. 2d at 266-67. The Boose court set forth 13 factors to be considered in deciding whether there is a manifest need to restrain a defendant at trial: (1) the seriousness of the offense; (2) the defendant's temperament and character; (3) the defendant's age and physical characteristics; (4) the defendant's past record; (5) any past escapes or attempted escapes; (6) evidence of a present plan of escape by the defendant; (7) any threats by the defendant to harm others or create a disturbance; (8) evidence of self-destructive tendencies; (9) the risk of mob violence or of attempted revenge by others; (10) the possibility of rescue attempts by any co-offenders at large; (11) the size and mood of the audience; (12) the nature and physical security of the courtroom; and (13) the availability of alternative remedies. Boose, 66 Ill. 2d at 266-67. Here, although, in the context of resentencing defendant, the trial court stated that defendant had "an extensive, extremely violent criminal history," the court never held a Boose hearing to determine whether there was a manifest need to restrain defendant.

Shackling defendant without conducting a <u>Boose</u> hearing was error. See <u>Boose</u>, 66 Ill. 2d at 266-67. The State concedes as much. However, the State argues that, because defendant made no objection to being handcuffed, either at trial or in a posttrial motion, he has forfeited the issue. <u>People v. Enoch</u>, 122 Ill. 2d 176, 186 (1988). We agree that defendant has forfeited the issue.

However, defendant has raised plain error, which is not precluded by the forfeiture rule. See <u>People v. Herron</u>, 215 Ill. 2d 167, 177-78 (2005). The plain-error doctrine circumvents the general forfeiture rule and allows a reviewing court to consider an unpreserved error where: (1) the evidence is close, regardless of the seriousness of the error; <u>or</u> (2) the error is serious, regardless of the closeness of the evidence. <u>Herron</u>, 215 Ill. 2d at 186-87. In the first instance, the defendant must prove "prejudicial error," <u>i.e.</u>, that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him or her. <u>Herron</u>, 215 Ill. 2d at 187. In the second instance, the defendant must prove that the error was so serious that it affected the fairness of the trial and the integrity of the judicial process. <u>Herron</u>, 215 Ill. 2d at 187. "This so-called disjunctive test does not offer two divergent interpretations of plain error, but instead two different ways to ensure the same thing--namely, a fair trial." <u>Herron</u>, 215 Ill. 2d at 179.

A fair trial is different from a perfect trial. <u>Herron</u>, 215 Ill. 2d at 177. The plain-error doctrine is not a general saving clause preserving for review all errors affecting substantial rights. <u>Herron</u>, 215 Ill. 2d at 177. In both instances, the burden of persuasion remains with the defendant. <u>Herron</u>, 215 Ill. 2d at 187. Restraining a defendant without a <u>Boose</u> hearing does not automatically constitute reversible plain error. <u>People v. Allen</u>, 222 Ill. 2d 340, 351 (2006).

Here, defendant cannot claim that the evidence was closely balanced. As defendant states in his own brief:

"[T]here was an abundance of evidence that [defendant] possessed heroin. The State had the virtue of expert witnesses regarding the possession, sale, and distribution of narcotics who linked the heroin to [defendant] and [established] that his possession was consistent with someone who intended to deliver. [Defendant] had no way to rebut this specific evidence." Defendant's one point of contention regarding the sufficiency of the evidence involves a factor so objective, i.e., distance, that the court's knowledge of defendant's shackling was unlikely to tip it one way or the other in resolving the question. And, in any case, as discussed above, the State established that, even after fleeing from police to run as far as 100 feet away from the site of the hand-to-hand transaction and away from the park, defendant still remained less than 1,000 feet from the park's boundaries.

Likewise, defendant has not demonstrated that his being handcuffed was so serious that it affected the fairness of his trial and the integrity of the judicial process. As to this prong, defendant argues that the error was sufficiently serious because: (1) the trial court was aware that he was restrained (cf. People v. Robinson, 375 Ill. App. 3d 320, 333 (2007) (finding that the defendant's shackling was not prejudicial because, among other reasons, it was questionable whether the jury actually saw the defendant's shackles)); and (2) the restraint limited his ability to participate in his own defense (Robinson, 375 Ill. App. 3d at 333). Defendant notes that the trial court was made aware of the handcuffs when defense counsel asked that they be removed so that defendant could demonstrate his handedness.

We recognize that, even in a bench trial, when we can assume that the judge considered only proper evidence and there was no danger of improperly influencing a jury, shackling is improper because it might offend the dignity of the judicial process or impede the defendant's ability to assist

in his own defense. Allen, 222 Ill. 2d at 346. Nevertheless, that the trial judge knew defendant was shackled, without more, is not enough to constitute reversible plain error. Similarly, defendant's assertion that he was limited in his ability to participate in his defense, without specifics, is not enough to show reversible plain error. As we have stated, restraining a defendant without a Boose hearing does not per se constitute reversible plain error. Allen, 222 Ill. 2d at 351. Because defendant did not object to being shackled at trial, he must do more than set forth the reasons shackling is improper in the abstract; he must set forth why he in particular was denied a fair trial or was impeded from assisting his counsel. Defendant has not shown that, in actuality, his presumption of innocence, his ability to assist counsel, or the dignity of the proceedings was compromised. See Allen, 222 Ill. 2d at 353.

## C. Ineffective Assistance

Defendant argues that his trial counsel was ineffective because he provided defendant with false information during the plea negotiation process, which prevented defendant from making a knowing and voluntary decision to accept or reject the State's plea offer. Specifically, defendant asserts that counsel told him that the following information was exchanged during the Rule 402 conference: (1) the State offered defendant a plea agreement wherein, in exchange for a guilty plea on both counts in the instant case and on the Class X felony in case No. 05--CF--2827, the State would seek consecutive sentences of 6 years on each case, for a total of 12 years; and (2) the trial court stated that, if defendant went to trial and was convicted in the instant case, it would sentence defendant to 15 years' imprisonment. Defendant does not allege that the trial court actually stated that it would sentence defendant to 15 years' imprisonment upon a conviction. Defendant acknowledges that such a promise would be "curious" because, at the time of the Rule 402

conference, the court would not have had enough information about defendant's background to affirmatively state what defendant's sentence would be following a trial and sentencing hearing. Rather, defendant alleges that his counsel <u>misrepresented</u> that the trial court made this promise. Defendant alleges that he relied on this misrepresentation in choosing to reject the State's 12-year plea offer and go to trial, where he was ultimately convicted and sentenced to 25 years' imprisonment and also remains subject to further sentencing in case No. 05--CF--2827 if convicted in that case.

A defendant has a sixth amendment right to effective assistance of counsel. See <u>People v. Taylor</u>, 237 Ill. 2d 356, 374 (2010). We review claims of ineffective assistance of counsel according to the two-prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693-94, 104 S. Ct. 2052, 2064-65 (1984) (adopted by the Illinois Supreme Court in <u>People v. Albanese</u>, 104 Ill. 2d 504, 525-26 (1984)), which requires a defendant to show both that: (1) as determined by prevailing professional norms, counsel's performance fell below an objective standard of reasonableness; and (2) the defendant was prejudiced by counsel's deficient performance.

Although a defendant does not have a constitutional right to a plea bargain, if the State chooses to bargain, the defendant has a right to effective assistance of counsel during those negotiations. <u>People v. Curry</u>, 178 Ill. 2d 509, 518, 528 (1997) (relying on <u>People v. Whitfield</u>, 40 Ill. 2d 308 (1968) (postconviction case holding that an attorney's failure to disclose a plea offer to his or her client may give rise to a constitutional violation), and <u>People v. Correa</u>, 108 Ill. 2d 541 (1985) (postconviction case holding that an attorney's false statement that the defendant's guilty pleas likely would not result in deportation fell below the constitutionally required range of competence and therefore rendered the pleas involuntary)). As part of a defendant's right to effective assistance of counsel during plea negotiations, a defendant has a right to be reasonably informed with respect

to the direct consequences of accepting or rejecting a plea offer. Curry, 178 Ill. 2d at 528. Additionally, defense counsel has an obligation to inform his or her client of the maximum and minimum sentences that can be imposed for the offense with which the defendant is charged. Curry, 178 Ill. 2d at 528. A defendant's right to effective assistance during plea negotiations extends to the decision to reject a plea offer, even if the defendant subsequently receives a fair trial. Curry, 178 Ill. 2d at 517.

In Curry, the defendant argued that he was denied effective assistance of counsel during plea negotiations and maintained that, but for his attorney's ineffectiveness, he would have accepted the plea offer and avoided trial. Curry, 178 Ill. 2d at 517-18. The defendant in Curry was charged with three offenses stemming from the same course of conduct: residential burglary and two counts of criminal sexual assault. The State offered the defendant a 4½-year sentence and the dismissal of the residential burglary charge and one of the criminal-sexual-assault charges in exchange for a guilty plea on the remaining criminal-sexual-assault charge. Defense counsel informed the defendant of the State's offer and also told the defendant that, if convicted at trial, he would face concurrent sentences of approximately four years on each of the three charges (for a total of approximately four years). Curry, 178 Ill. 2d at 516. Defense counsel also informed the defendant that he would likely receive close to the minimum sentences because he had no prior criminal history. Curry, 178 Ill. 2d at 523. The defendant rejected the plea offer, based on the information given to him by defense counsel. Curry, 178 Ill. 2d at 516. Following a jury trial, the defendant was convicted of all three charges. At sentencing, the trial court stated that the defendant's convictions of criminal sexual assault triggered the mandatory consecutive sentencing provision in section 5--8--4(a) of the Unified Code of Corrections (730 ILCS 5/5--8--4(a) (West 1992)). Curry, 178 Ill. 2d at 515. The trial court

sentenced the defendant to three consecutive terms of 4 years' imprisonment, for a total term of 12 years.

The Curry court held that defense counsel did not fulfill his obligation to inform his client of the maximum and minimum sentences that could be imposed for the charged offenses, rendering his performance during the plea negotiations objectively unreasonable. Curry, 178 Ill. 2d at 529. The court noted that knowledge of the comparative sentence exposure between accepting a plea offer and standing trial is often crucial to the defendant's decision to accept or reject a plea agreement offer. Curry, 178 Ill. 2d at 528, citing 1 ABA Standards for Criminal Justice §4--5.1, Commentary (2d ed. 1980). The court further noted that, by informing the defendant that there was a substantial possibility that he would receive close to a four-year sentence if convicted of any of the three charges, defense counsel "affirmatively misstated the consequences of rejecting the plea offer and made 'unequivocal, erroneous, misleading representations.' " Curry, 178 Ill. 2d at 528-29, quoting Correa, 108 Ill. 2d at 552; see also People v. Brown, 309 Ill. App. 3d 599 (1999) (relying upon Curry in holding that attorney rendered ineffective assistance during plea negotiations where he failed to inform the defendant that, because of his criminal history, he would receive a natural-life sentence if convicted).

In both Curry and Brown, the courts recognized that no perfect remedy existed, but each court ultimately reversed the defendant's conviction(s) and remanded the cause for a new trial with the possibility of resuming plea negotiations. Curry, 178 Ill. 2d 536-37, citing State v. Kraus, 397 N.W.2d 671, 674 (Iowa 1986) (stating that a fair trial, or even a series of them, will not restore the "lost chance" of the plea bargain); Brown, 309 Ill. App. 3d at 607. However, as recognized by the Brown court, the State, now cognizant of the mandatory sentence, may decline to make the defendant

the same plea offer or may refuse to enter into negotiations altogether. Brown, 309 Ill. App. 3d at 606.

Here, the State does not address Strickland's first prong, essentially conceding that counsel's performance fell below an objective standard of reasonableness when he told defendant that the trial court had said that it would sentence defendant to 15 years if he were convicted at trial. While counsel's performance during the plea negotiations as indicated in the record is troubling--counsel provided defendant with misinformation and also appeared to be operating under the assumption that, even when a defendant enters a plea of not guilty, it is solely the court's responsibility, not counsel's, to inform the defendant of the maximum and minimum sentences that can be imposed for the offense with which the defendant is charged (a concept we reject)--the record is not sufficiently developed to support an ineffective-assistance claim.

Claims of ineffective assistance of trial counsel are preferably brought on collateral review rather than direct appeal. People v. Bew, 228 Ill. 2d 122, 134-35 (2008) (finding that, although the record on direct appeal was insufficient to establish ineffective assistance, the defendant could raise the issue under the Post-Conviction Hearing Act (725 ILCS 5/122--1 et seq. (West 2006))). Generally, a defendant is not required to bring a claim of ineffective assistance on direct review or else forfeit that claim. Bew, 228 Ill. 2d at 134. This is because, when an ineffective-assistance claim is brought on direct appeal, " 'appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose.' " Bew, 228 Ill. 2d at 134, quoting Massaro v. United States, 538 U.S. 500, 504-05, 155 L. Ed. 2d 714, 720, 123 S. Ct. 1690, 1694 (2003). The benefit of raising an ineffective assistance claim in a collateral proceeding is that the defendant has a full opportunity to

present evidence establishing ineffective assistance, the State has a full opportunity to present evidence to the contrary, the trial court has an opportunity to make credibility determinations, and the appellate court, if need be, has the benefit of a factual record bearing precisely on the issue. Bew, 228 Ill. 2d at 134.

Whitfield and Correa, the cases upon which Curry relies, are both postconviction cases with records specifically developed to examine the issue of ineffective assistance during the plea negotiations. Curry, though not a postconviction case, arose under circumstances uniquely conducive to developing a record on the issue of ineffective assistance during the plea negotiation. In Curry, the transcripts showed that, following the trial and conviction, the State recommended concurrent sentences that were, in sum, less than the consecutive sentences required by statute. Curry, 178 Ill. 2d at 158. In addition, on the motion to reconsider the sentence, the defense submitted into the record: (1) a stipulation stating that, if the defendant were called to testify, he would testify that he would have accepted the State's 4½-year offer had he been properly informed that convictions on all three counts would lead to a minimum of 12 years; and (2) an affidavit by defense counsel expressly stating that he misinformed the defendant of the likely consequences of accepting or rejecting the plea offer. Curry, 178 Ill. 2d at 516. Thus, the record clearly reflected that, prior to sentencing, none of the parties understood that convictions would lead to mandatory consecutive sentences, and the defendant was therefore without a doubt prevented from making an informed decision regarding his plea.

Likewise, Brown, was not a postconviction case but was suited to evaluating the ineffective-assistance claim on direct appeal. In Brown, the defendant, presumably with the assistance of new counsel, filed a post-trial motion to vacate his conviction on the ground that he had received

ineffective assistance of counsel during his plea negotiations. Brown, 309 Ill. App. 3d at 602. Attached to that motion, the defendant submitted: (1) an affidavit stating that, had he been properly informed of his likely sentence, he would have accepted the State's plea offer (of 15 years' imprisonment); (2) an affidavit by defense counsel stating that he never informed the defendant that, given the defendant's criminal history, the defendant would be subject to a mandatory life sentence if convicted; and (3) two additional affidavits by employees of the public defender's office, including the chief public defender, stating that defense counsel should have known of the defendant's criminal history because investigators noted it in defendant's file, to which defense counsel had access prior to the receipt of the State's offer. Brown, 309 Ill. App. 3d at 602-03. At the hearing on the motion, the defendant testified consistently with his affidavit. Brown, 309 Ill. App. 3d at 603.

Here, in contrast, the record on defendant's ineffective-assistance claim is insufficiently developed. We have counsel's statement at the hearing that he told defendant that the trial court stated at the Rule 402 conference that, if defendant were convicted following a trial, defendant would receive 15 years' imprisonment. We have counsel's statement that it was his belief that defendant relied on this information in choosing to reject the State's 12-year recommendation in exchange for a guilty plea. We have the absence of any statement by counsel that he ever accurately informed defendant as to the maximum and minimum sentences that could result from a conviction. Instead, we have only counsel's repeated argument at the hearing on the motion to reconsider the sentence that the court did not inform defendant of the sentencing range at the March 31, 2006, arraignment.[2]

_____

[2] We note that, at the February 17, 2006, preliminary hearing, Judge Englesma stated potential sentences. However, court admonishments as to potential sentences do not necessarily cure counsel's misrepresentations. See Correa, 108 Ill. 2d at 552.

Moreover, counsel made these statements under the argument that defendant's sentence was inappropriately extended, rather than in the context of an ineffective-assistance claim. Perhaps because of this, counsel never expressly stated exactly what he told defendant. It is unclear whether counsel told defendant that the court would sentence defendant to 15 years for count I only; for counts I and II together; or for counts I and II and case No. 05--CF--2827. Counsel's representations as to what he told defendant seem internally inconsistent. For example, counsel stated that it was foolish of defendant to reject a 12-year plea offer. Nevertheless, counsel simultaneously maintained that the trial court stated that defendant would get 15 years if defendant were convicted at trial and that thus defendant did not have much to lose by going to trial. Additionally, counsel stated that he did not believe that defendant would have rejected the plea offer had defendant known he would be subjected to an extended-term sentence of 40 years, and possibly as high as 60 years. However, the relevance of such a position has faded, as this sentencing scheme was later found to be inapplicable. Counsel never set forth whether defendant would have rejected the State's plea offer had he known he faced a typical Class X sentencing scheme of 6 to 30 years, which is, indeed, what he faced. Defendant himself did not testify on the matter at all. For these reasons, defendant's ineffective-assistance claim must fail on direct appeal.

However, because it may arise in a postconviction proceeding, we note that we reject the State's argument that, regardless of any deficiencies in defense counsel's performance, defendant was not prejudiced. The State argues that defendant was not prejudiced by counsel's error because "[defendant] received the precise remedy he requested when he asked the trial court to reconsider his sentence." The State recounts that, at the hearing on the motion to reconsider, counsel argued that defendant's sentence should be reduced because defendant had relied on counsel's representation that

the trial court would sentence defendant to 15 years if convicted at trial. Counsel then requested that the trial court reduce defendant's sentence "to what is required for a Class X offense; namely, six to thirty years." The court reduced defendant's sentence from 40 years to a sentence within the 6-to-30-year range requested by counsel, i.e., 25 years.

We disagree with the State's argument, i.e., that defendant was not prejudiced by defense counsel's pretrial misrepresentation as to sentencing because counsel secured posttrial relief as to sentencing. Prejudice under the Strickland test is established when it is shown that there is a reasonable probability that the result of the proceeding would have been different had counsel not erred. Strickland, 466 U.S. at 687-88, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65. The "proceeding" at issue here is the plea negotiation, not the sentencing hearing. Defendant is not arguing that, had counsel not erred, defendant would have received a sentence within the proper range at the initial sentencing hearing. Like the defendant in Curry, defendant here argues that, had counsel not erred, defendant would have accepted the plea offer and avoided trial.

We also disagree with the State's alternative argument that, even if defendant was prejudiced by counsel's misrepresentation of the consequences of rejecting the State's plea offer, defendant forfeited his right to raise the issue on appeal, because he was present at the sentencing hearing and made no objection to counsel's request that the trial court confine its sentencing to 6 to 30 years required for a Class X offense. The State cites People v. Asselborn, 278 Ill. App. 3d 960, 962-63 (1996), for the proposition that a defendant who permits his counsel in his presence and without objection to take actions on his behalf is deemed to have acquiesced in, and is bound by, his counsel's actions. The State's reliance on Asselborn is misplaced. The proposed remedy to which defendant arguably acquiesced was aimed at correcting a sentence that counsel contended was inappropriately

extended. The proposed remedy was not aimed at restoring defendant's plea bargain opportunity lost due to counsel's alleged ineffectiveness. Defendant's argument that counsel was ineffective for misrepresenting the consequences of rejecting the plea offer was never presented at the hearing on the motion to reconsider the sentence. Therefore, defendant cannot be said to have acquiesced in a remedy for counsel's ineffectiveness.

## III. CONCLUSION

For the aforementioned reasons, we affirm the trial court's judgment.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.