2019 IL App (1st) 162669-U

FIRST DIVISION
November 4, 2019

No. 1-16-2669

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County, Criminal Division. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 13 C6 61254 |
| | ) | |
| MICHAEL JOE, | ) | Honorable |
| | ) | Tommy Brewer, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE GRIFFIN delivered the judgment of the court.
Justices Hyman and Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*: We vacate defendant's conviction and sentence for possession of a controlled substance, correct the mittmus and affirm the judgment of the circuit court of Cook County in all other respects.

¶ 2    Defendant Michael Joe was pulled over for speeding and arrested after the police found a bottle of codeine and two guns in his car. A jury found him guilty of armed violence (counts I and II), aggravated unlawful use of a weapon (counts IV and V) and possession of a controlled substance (count VIII). The trial court sentenced him to 15 years in prison on counts I and II, one year in prison on both counts IV and V, and two years in prison on count VIII. The sentences ran

concurrently.

¶ 3    Defendant appeals, and argues that: (1) the trial court erred when it denied his motion to suppress; (2) his counsel was ineffective; and (3) the evidence was insufficient to support his convictions for armed violence. Alternatively, defendant asks us to vacate his conviction and sentence on count VIII for possession of a controlled substance and to correct the mittimus. For the following reasons, we vacate defendant's conviction and sentence on count VIII, order the clerk of the circuit court to correct the mittimus and affirm the judgment of the circuit court of Cook County in all other respects.

¶ 4                                    I. BACKGROUND

¶ 5    On September 23, 2013, defendant was pulled over for speeding and later arrested for possessing a bottle of codeine without a prescription and two unloaded handguns without a valid firearm owner's identification (FOID) card. The State charged defendant with two counts of armed violence (720 ILCS 5/33-A-2(a) (West 2012)), two counts of aggravated unlawful use of a weapon (§§ 24-1.6(a)(1), (3)(c)), one count of possession of a stolen firearm (§ 24-3.8(a)) and one count of possession of a controlled substance (§ 570/402(c)). Defendant filed a motion to suppress and a hearing was held on October 6, 2013.

¶ 6                                 a. Suppression Hearing

¶ 7    At the suppression hearing, defendant testified that on September 21, 2013 at 5:00 p.m., he drove his car west down Sibley Boulevard and was pulled over by the police after he turned onto Wentworth Avenue. The traffic stop took place in the driveway of his home. Defendant testified that he was not driving fast and did not commit any traffic violations prior to being pulled over.

¶ 8    Two police officers approached his car and one of them asked for defendant's driver's

license and insurance. Defendant complied with the request and the police officer walked to his squad car. When the officer returned, he asked defendant about a baby bottle sitting his center console. Defendant told the officer it was his "son's prescription." Defendant and two of his passengers were ordered out of the car. Defendant' was placed in the back of the squad car while the police searched his vehicle. Defendant was later placed under arrest and gave a written statement to the police.

¶ 9    Defendant further testified that a prescription bottle sat next to the baby bottle in his center console. He gave both bottles to the police, but did not see the officers test the contents of either bottle. Defendant testified that he did not tell the officers that the bottles contained "lean" or that he and his son did not have a prescription for codeine.

¶ 10    The parties stipulated that the substance contained in the prescription bottle tested positive for codeine and there were "two guns found within the vehicle on the day and time in question." It was further stipulated that the contents of the baby bottle tested negative for the presence of a controlled substance. The defense rested.

¶ 11    The State called police officer Roy Jones as a witness. Officer Jones testified that on September 21, 2013, he and his partner, police officer McNamara, were on Sibley Boulevard, near the intersection of Sibley and Wentworth Avenue in Dolton, Illinois. Officer Jones saw a car "take the turn pretty fast" onto Wentworth and proceeded to pace the car (following at least one car length behind the vehicle in question and look at the speedometer to determine the rate of speed). He determined that the car was traveling at a rate of 40 miles per hour. The posted speed limit was 25 miles per hour. Officer Jones activated his lights and sirens, and followed the car until defendant made a right turn and stopped in the driveway of a house.

¶ 12    As Officer Jones approached the driver's side of the car, he saw a baby bottle and a

prescription bottle sitting in the center console. The prescription bottle was labeled with the word "codeine." No patient names were indicated on the bottle. Officer Jones asked defendant if the bottle contained "lean." Defendant answered "yes" and gave Officer Jones both bottles. When Officer Jones asked defendant if he or his son had a prescription for codeine, defendant answered "no." Officer Jones placed defendant in handcuffs and Officer McNamara searched defendant's car.

¶ 13    Officer McNamara recovered one handgun from under the driver's seat and another handgun from a box under the front passenger's seat. Officer Jones tested the contents of the baby and prescription bottles on scene and both items tested positive for codeine and promethazine.

¶ 14    On cross-examination, Officer Jones explained how he paced defendant's car. However, he could not remember how far he traveled before pulling defendant over and his police report failed to refresh his recollection. Officer Jones' police report also failed to indicate whether he asked defendant if he had a prescription for codeine. The State rested.

¶ 15    The trial court found Officer Jones credible and denied defendant's motion to suppress. Defendant's case was tried before a jury and the State called Officer Jones and Officer McNamara as witnesses. Defendant presented no evidence.

¶ 16                                    b. Jury Trial

¶ 17    Officer Jones testified that he was on patrol on September 21, 2013 when he observed a car traveling in excess of the speed limit. He paced the car, determined its rate of speed and pulled the car over. The car stopped in the driveway of a home. Officer Jones asked the driver for his license and proof of insurance and observed a "medicine bottle," and a baby bottle in the center console. The medicine bottle had the word "codeine" on it and the label was "partially

disfigured" to the point where the patient name could not be identified. Defendant admitted there was "lean" in the bottle ("a mixture of beverages, codeine and promethazine cough syrups") and that he lacked a valid prescription for the substance.

¶ 18 Officer Jones ordered defendant and the two other occupants out of the car and Officer McNamara searched it, finding two handguns under the car's front seats. Officer Jones read defendant his *Miranda* rights and defendant agreed to speak with him. Defendant took full responsibility for the codeine and two guns found in his car. At the police station, defendant gave a written statement, which Officer Jones read aloud to the jury.

¶ 19 Officer McNamara testified that he was on patrol with Officer Jones on the night of September 21, 2013 when they observed a car speeding down a side street. The posted speed limit was 25 miles per hour and "based on experience and training," Officer McNamara determined that the car was traveling at a rate of 40 miles per hour. The car pulled over in a driveway.

¶ 20 Officer NcNamara approached the car and overheard Officer Jones say, "hey man is that lean." He saw the driver of the car hand Officer Jones two bottles. All the occupants were ordered out of the car and Officer McNamara searched it. He recovered a "9mm handgun" underneath the driver's side seat and a "Ruger .22 pistol" under the passenger's side seat, which was in a "broken up shoe box with no lid." Neither handgun was loaded.

¶ 21 The parties stipulated that: (1) a forensic scientist at the "Illinois Regional Crime Lab" tested both bottles recovered from defendant's car; (2) the prescription bottle tested positive for codeine; (3) the baby bottle did not test positive for a controlled substance; (4) no promethazine was detected in either of the bottles; (4) it is possible for field tests to be contradicted by laboratory tests, which test chemical structure and not merely color; and (5) an officer from the

"Firearm Services Bureau of the Cook County Sheriff's Office" conducted a search and found that defendant did not have a valid FOID card.

¶ 22    The State rested and defendant moved for a directed verdict. The trial court granted defendant's motion with respect to count III, which charged defendant with possession of a stolen firearm (720 ILCS 5/24-3.8(a) (West Supp. 2013)).

¶ 23    The jury found defendant guilty of two counts of armed violence (*id*. § 33-A-2(a)), two counts of aggravated unlawful use of a weapon (*id*. §§ 24-1.6(a)(1), (3)(c)) and one count possession of a controlled substance (*id*. § 570/402(c)). Defendant filed a posttrial motion, which was denied. The trial court sentenced defendant to 15 years in prison on counts I and II, one year in prison on both counts IV and V, and two years in prison on count VIII. The sentences ran concurrently.

¶ 24    Defendant appeals, and argues that: (1) the trial court erred when it denied his motion to suppress; (2) his counsel was ineffective; and (3) the evidence was insufficient to support his conviction for armed violence (*id*. § 33-A-2(a) (West 2012)). Alternatively, defendant asks us to vacate his conviction and sentence on count VIII and to correct his mittimus.

¶ 25                                    II. ANALYSIS

¶ 26                                a. Motion to Suppress

¶ 27    We apply a two-part standard of review when ruling on a motion to quash arrest and suppress the evidence. *People v. Garcia*, 2017 IL App (1st) 142141, ¶ 27. "While we accord great deference to the trial court's factual findings, and will reverse those finding only if they are against the manifest weight of the evidence, we review *de novo* the court's ultimate ruling on a motion to suppress." *People v. Grant*, 2013 IL 112734, ¶ 12. The defendant bears the ultimate burden of proof on a motion to suppress. *People v. Cregan*, 2014 IL 113600, ¶ 23.

¶ 28 Defendant asks us to reverse the trial court's ruling on his motion to suppress because Officer Jones' testimony about how he determined defendant's rate of speed, i.e. pacing, was "too incredible and contradicted for any trier of fact to accept" and he arbitrarily pulled defendant over without any reasonable suspicion that he was speeding. *People v. Rice*, 2019 IL App (3d) 170134, ¶ 17. According to defendant, a search of "Google maps" reveals that the distance between the intersection of Sibley Boulevard and Wentworth Avenue, and defendant's residence is ".2 miles," which means that Officer Jones would have had "less than 18 seconds" to catch up defendant's car, pace his speed and pull him over. Defendant argues that pacing defendant's car under these circumstances was "impossible" and Officer Jones could not have reasonably suspected that defendant was speeding.

¶ 29 An appellate court may take judicial notice of a fact that the trial court did not. *People v. Clark*, 406 Ill. App. 3d 622, 632 (2010). A judicially noticed fact must be one not subject to reasonable dispute, meaning that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. *Id.*

¶ 30 A court of review will not, however, take judicial notice of critical evidentiary material that was not presented to and not considered by the fact finder during its deliberations. *People v. Boykin*, 2013 IL App (1st) 112696, ¶ 9. Judicial notice cannot be extended to permit the introduction of new factual evidence not presented to the trial court. *People v. Barham*, 337 Ill. App. 3d 1121, 1130 (2003).

¶ 31 Defendant's request for judicial notice goes far beyond indisputable measurement and into the realm of fact-finding, calculation and deduction based upon new evidence. We find that the scenario presented by defendant is composed of new factual evidence that the trial court

never had an opportunity to consider and thus, it cannot be judicially noticed for the first time on appeal. Accordingly, defendant has advanced no basis for reversing the trial court's ruling on his motion to suppress and his argument is rejected.

¶ 32    We also reject defendant's argument that Officer Jones' pacing testimony given at the suppression hearing was contradicted by the absence of any similar testimony given by Officer McNamara at trial. This argument fails for two reasons: (1) an affirmative contradiction between the testimony of two witnesses does not arise merely because one witness provided testimony on a particular subject and the another did not; and (2) trial evidence can be considered to *affirm* the denial of a motion to suppress, but not to *reverse* it. See *People v. Brooks*, 187 Ill. 2d 91, 127-128 (1999). Defendant also failed to ask the trial court to reconsider its decision on his motion to suppress after this purported contradiction in testimony arose at trial. *Id.*

¶ 33                              b. Ineffective Assistance of Counsel

¶ 34    Defendant claims that his counsel was ineffective for failing to: (1) present the "judicially noticeable evidence" in the trial court; and (2) raise the argument at the suppression hearing that "the officers were required to obtain a warrant to arrest [defendant] and search his vehicle on the curtilage of his home."

¶ 35    Claims of ineffective assistance of counsel are judged under the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504 (1984). *People v. Dupree*, 2018 IL 122307, ¶ 44. Under the *Strickland* standard, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

¶ 36    To satisfy the deficient performance prong of *Strickland*, a defendant must show that his

counsel's performance was so inadequate "that counsel was not functioning as the counsel guaranteed by the sixth amendment" and must also overcome the strong presumption that any challenged action or inaction may have been the product of sound trial strategy. *People v. Evans*, 186 Ill. 2d 83, 93 (1999); *People v. Griffin*, 178 Ill. 2d 65, 73-74 (1997).

¶ 37    This is a high bar to clear because matters of trial strategy are generally immune from claims of ineffective assistance of counsel. *People v. Manning*, 241 Ill. 2d 319, 327 (2011). But even if a defendant can show deficient performance, the second prong requires him or her to show that prejudice resulted. That is, a defendant must show that counsel's deficiency was so serious that it deprived him of a fair trial. *People v. Smith*, 195 Ill. 2d 179, 188 (2000).

¶ 38    We are unable to resolve defendant's ineffective assistance counsel claims on the merits given the state of the record. See *People v. Veach*, 2017 IL 120649, ¶ 46 (ineffective assistance claims may sometimes be better suited to collateral proceedings when the record is incomplete or inadequate for resolving the claim). Because the new factual evidence regarding Officer Jones' purported inability to pace defendant's car was not judicially noticeable for the first time on appeal there exists no factual basis in the record for his argument.

¶ 39    By the same token, there are no facts in the record to support the threshold argument that defendant's driveway was curtilage. See *U.S. v. Dunn*, 480 U.S. 294, 301 (1984) (the following factors guide the determination of whether property is curtilage of the home:  (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by). Accordingly, the state of the record precludes any resolution of defendant's claims of ineffective assistance of counsel on the merits.

¶ 40                              c. Sufficiency of the Evidence

¶ 41    Defendant argues that the evidence was insufficient to convict him of armed violence (720 ILCS 5/33-A-2(a) (West 2012)). Defendant specifically claims that the evidence showed, at best, that he constructively possessed two unloaded handguns, which is insufficient to support a finding beyond a reasonable doubt that he was "otherwise armed" as required by the armed violence statute (*id.*).

¶ 42    When faced with challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). We will not reverse defendant's convictions unless the evidence is so improbable, unsatisfactory or inconclusive that it creates a reasonable doubt of defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011).

¶ 43    To prove the offense of armed violence, the State had to prove that defendant committed a predicate felony (here, the possession of a controlled substance (720 ILCS 570/402(c) (West 2012)) while he was "armed with a dangerous weapon." *Id*. § 33A-2(a) (West 2012). A person is "armed with a dangerous weapon" under the statute when he or she carries about his or her person or is otherwise armed with a weapon. *Id*. § 33A-1(c)(1).

¶ 44    The statute does not require actual or physical possession of a weapon. *People v. Harre*, 155 Ill. 2d 392, 396 (1993). The evidence need only demonstrate beyond a reasonable doubt that defendant had "immediate access to" or "timely control over" a weapon. See *People v. Condon*, 148 Ill. 2d 96, 110 (1992). Constructive possession, however, will not suffice. *Id*. at 110-112.

¶ 45    Contrary to defendant's argument, a rational trier of fact could conclude based on the

evidence that defendant had immediate access to the handguns in his car. See *Harre*, 155 Ill. 2d at 400. Officer McNamara testified at trial that he recovered two guns from defendant's car; one under the driver's seat and the other under the passengers' seat. The second gun was in a "broken shoe box" with no lid. Both officers testified that defendant was driving the car and remained in the driver's seat when they approached his vehicle. Accordingly, defendant's argument that the evidence showed no more than his constructive possession of the handguns is unavailing.

¶ 46    Also unavailing is defendant's argument that the potential for violence envisioned by the armed violence statute (720 ILCS 5/33A-2(a) (West 2012)) was not present in his case because the handguns recovered by the police were unloaded. The statute contains no requirement that a handgun be loaded in order to qualify as a dangerous weapon (*id*. §§ (c)(1)-(c)(3)) and several courts have found that "[b]y not discriminating between loaded and unloaded firearms, the legislature advances the aim of the statute, as an unloaded firearm can provoke violent reaction from one who is not certain it is unloaded." *People v. Anderson*, 364 Ill. App. 528, 542 (2006).

¶ 47    Accordingly, the evidence was not so improbable, unsatisfactory or inconclusive as to create a reasonable doubt of defendant's guilt and the reversal of convictions is not warranted.

¶ 48                              d. One Act, One Crime Doctrine

¶ 49    Lastly, defendant argues (and the State concedes) that his conviction and sentence entered on count VIII for possession of a controlled substance (720 ILCS 570/402(c) (West 2012)) violates the one act, one crime doctrine. We agree and find that the trial court's decision constituted plain error. *People v. Harvey*, 211 Ill. 2d 368, 389 (2004). Multiple convictions for both armed violence and the underlying felony cannot stand where a single physical act serves as the basis for both charges. *People v. Donaldson*, 91 Ill. 2d 164, 170 (1982).

¶ 50    Accordingly, we vacate defendant's conviction and sentence on count VIII and order the

clerk of the circuit court to correct the mittimus. Ill. S. Ct. R. 615(b)(1) (eff. Jan. 1, 1967); *People v. Walker*, 2011 IL App (1st) 072889, ¶ 40 (appellate court has authority to directly order clerk of the circuit court to make the necessary corrections to the mittimus).

¶ 51                                    CONCLUSION

¶ 52     Based on the foregoing, we vacate defendant's conviction and sentence on count VIII for possession of a controlled substance (720 ILCS 570/402(c) (West 2012)) and order the clerk of the circuit court of Cook County to remove defendant's conviction and sentence on count VII from the mittimus. The judgment of the circuit court of Cook County is affirmed in all other respects.

¶ 53     Affirmed in part; vacated in part; mittimus corrected.