# Illinois Official Reports

## Appellate Court

*People v. Evans*, 2015 IL App (1st) 130991

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES EVANS, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-13-0991 |
| Filed | June 8, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-3038; the Hon. Lawrence Edward Flood, Judge, presiding. |
| Judgment | Affirmed as modified. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Whitney B. Price, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Jocelyn M. Schieve, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion. |

**OPINION**

¶ 1 The circuit court found defendant, James Evans, guilty after a bench trial of possession of cannabis and sentenced him to 12 months' probation. 720 ILCS 550/4(d) (West 2010). Defendant raises three issues for our review: (1) whether the State presented sufficient evidence to sustain his conviction for possession of cannabis; (2) whether defendant received the effective assistance of trial counsel where his counsel did not file a motion to suppress the cannabis recovered during his arrest; and (3) whether the circuit court failed to apply a credit for the time he served in presentence custody against the various fines imposed on him.

¶ 2 We hold the State presented sufficient evidence to sustain his conviction for possession of cannabis. We decline to review defendant's claim of ineffective assistance of counsel based on the record before us, but note that defendant may still pursue his claim under the Post-Conviction Hearing Act (725 ILCS 5/122-1 to 122-7 (West 2010)). The State concedes, and we agree, that defendant is entitled to a $5 credit per day for the time he spent in presentence custody. 725 ILCS 5/110-14 (West 2010). Accordingly, we reduce the total monetary judgment against defendant by $10 based on the two days defendant spent in presentence custody.

¶ 3                                JURISDICTION

¶ 4 The circuit court sentenced defendant on February 11, 2013. Defendant timely filed his notice of appeal on March 6, 2013. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. Rs. 603, 606 (eff. Feb. 6, 2013).

¶ 5                                BACKGROUND

¶ 6 The State charged defendant by information with one count of possession of cannabis between 30 and 500 grams in connection with the events that led to defendant's arrest on February 4, 2011. 720 ILCS 550/4(d) (West 2010). On that date, the Chicago police department executed a search warrant at 12534 South Bishop Street, in Chicago, Illinois.

¶ 7 Officer David Guzman of the Chicago police department testified he was part of a team of approximately eight other officers executing a search warrant at 12534 South Bishop Street. He described the dwelling as a "ranch *** single family residence on a slab." He could not, however, recall the name of the person who was the target of the search warrant. Officer Guzman and the team of officers gained entry into the house through the front door, which was unlocked. Upon entering the home, the officers found themselves in the living room. Officer Guzman announced both his office and their search warrant. He wore civilian clothes underneath a police department raid vest. His star vestibule was visible on his belt. The other officers present were dressed in a similar manner. He instructed the occupants of the home to stay where they were so he could see their hands and to not make any movements. He estimated that approximately two adult males, two adult females, and two young children were present at the house.

¶ 8 Officer Guzman explained how he first encountered defendant, and defendant's actions, in the following exchange:

"Q. What did defendant do?

A. The defendant was observed in the rear bedroom of the location. He was instructed to show his hands and to step towards myself.

Q. Did he do that?

A. Yes. He did that after throwing an item and closing the door to the location.

Q. Did you see what the item was?

A. Yes. The item was a tan plastic bag, such as a Jewel[ ] bag.

Q. So is it fair to say that the defendant did not remain where he was as you ordered?

A. Yes.

Q. So what did you do? Where did you go?

A. I immediately detained [defendant].
***
Q. And what did you do then?

A. I turned the defendant over to the affiant of the warrant, Officer Matthew[s].

Q. And then, what did you do?

A. I went into the same bedroom that the defendant was located. I secured that bedroom and I recovered the–

Q. Let me stop you. When you saw the defendant throw the plastic bag, where did he throw it?

A. He threw it to the ground.

Q. Where was he standing?

A. In the bedroom.

Q. And did you then retrieve the defendant from that room?

A. Yes.

Q. Is it at that point that you handed him over to Officer Matthews?

A. Yes.

Q. Did you return to that same bedroom?

A. Yes.

Q. What did you do there?

A. I recovered the same tan bag.

Q. Were there other tan plastic bags in that room?

A. No."

¶ 9     Officer Guzman later testified that the tan bag was in defendant's hand, and he saw him throw it while defendant was in the bedroom. Officer Guzman had directed defendant to come out of the bedroom. As defendant exited the bedroom, defendant threw the tan plastic bag to the ground, and then closed the door behind him. Upon checking the contents of the plastic bag, Officer Guzman found six smaller bags containing what he suspected to be cannabis. Officer Guzman initially described the six smaller bags as "narcotic bags," but later testified he could not recall the type of bags he found inside the tan plastic bag. After showing Officer

Matthews the contents of the bag, Officer Guzman continued to search the bedroom and found a scale.

¶ 10 On cross-examination, Officer Guzman testified that the subject of the search warrant was Cokey Terrell Sweet, not defendant, and they were looking for ecstasy and "DMA."[1] The residence had approximately four bedrooms. When Officer Guzman first entered the house, four individuals were in the living room, including a senior citizen and a woman he believed was named Jamie Granberry. A woman named Jarah Granberry was also present. Officer Guzman could not recall if he was the first officer through the front door of the house, but he did remember that he was "one of the first" officers to enter the residence. Officer Guzman did not see defendant right away when he entered the apartment. He explained that he entered through the front door, passed through the living room, the kitchen, and a utility area before arriving in the rear bedroom. Defendant did not try to flee from him. The plastic bag he recovered was not submitted for fingerprint analysis. He could not recall if defendant made any statements to him indicating that the bag contained cannabis.

¶ 11 On redirect examination, Officer Guzman testified he had seen similar bags prior to this occasion. He clarified that he saw "six bundles of clear plastic bags. I don't recall exactly if the packaging that contained the cannabis were Ziploc or sandwich bags or freezer bags. *** [B]ecause they were clear plastic, I could see what the contents were in the bag." He did not remove the bags individually to examine them. He estimated the time frame from his entry into the house until he first saw defendant as "[a]pproximately less than a minute."

¶ 12 Chicago police officer Tamara Matthews testified she was part of the team executing the search warrant at 12534 South Bishop Street. When she entered the residence, she proceeded to an open area near the bedroom where she saw Officer Guzman. Officer Guzman instructed her to detain defendant while Officer Guzman walked into the bedroom. The door to the bedroom was closed, so Officer Guzman opened the door. She saw Officer Guzman retrieve a tan plastic bag from the floor. He looked inside the bag and walked toward Officer Matthews with a bag in his hand which contained cannabis. Officer Guzman then retrieved small square bags, which Officer Matthews knew from experience are used to package narcotics for distribution. Officer Guzman also recovered a scale from the floor of the bedroom. Officer Matthews searched the bedroom and found evidence which listed defendant's name and his address as 12534 South Bishop Street, including: an Illinois State Police citation; an Illinois identification card; a firearm owner's identification card; and an Illinois driver's license. On cross-examination, Officer Matthews denied that she recovered "the ID['s]" out of defendant's wallet.

¶ 13 The parties stipulated that the police maintained a proper chain of custody over the six bags the police recovered from the scene. The parties further stipulated that the police tested two of the six bags, which contained 51.9 grams of cannabis. The total weight of all of the substance in the bags was 155.7 grams.

¶ 14 The circuit court denied defendant's motion for a directed verdict.

¶ 15 Jamie Granberry, defendant's sister, testified she lives with her father, her sister, her sister's children, and her own children, at 12534 South Bishop Street. Defendant, however, lived with his fiancée in Blue Island, Illinois. On the day of the incident, defendant went to her house to help shovel snow. When he arrived at 8 a.m., he came inside to say hello before going

---

[1]Officer Guzman did not define DMA.

- 4 -

outside to shovel snow. At 10 a.m., defendant came inside and "stretched out on the couch" because he was tired from shoveling snow. Defendant, Granberry, and her father then sat around talking in the living room. At noon, the police "kicked right through the door." Defendant remained sitting on the couch. She did not see him holding a tan bag of cannabis. Her sister, Jarah, lives in the back bedroom. She testified that defendant moved out of the house "six or seven" years earlier, but explained that the home at 12534 South Bishop Street is the family house and the house where defendant grew up. When defendant moved out, he took all of his belongings and he did not pay bills from there.

¶ 16    Defendant testified that on February 4, 2011, he lived in Blue Island, Illinois, with his fiancée and three kids. He did not change his address on his driver's license because he "was still going to school and a lot of important information was still being retrieved at my address that I had used for years." On the day of the incident, he went to the family home on South Bishop Street around 8 a.m. to help shovel snow after a blizzard. After shoveling snow, he came back inside and sat on the couch in the living room. At noon, the police kicked the door of the house down. Defendant, his sister Jamie, Jamie's kids, and his father were sitting in the front of the house. Antoine Sweet, his sister's boyfriend, was in the back of the house. Defendant testified he "cooperated" with the police but then became upset and "began lashing out" at the police. The police responded by putting defendant in handcuffs. Defendant testified that the police first secured the front of the house before heading toward the back of the house. He estimated it took the police "between thirty and forty-five minutes" to find the cannabis. Defendant testified that he had never seen the cannabis before and that the police retrieved his identification from his wallet out of his pocket.

¶ 17    On cross-examination, defendant testified that he had been out of the family house "a little over six years." He clarified that when the police returned from the back of the house, they were "dangling the bag" of cannabis. He did not know where they got the bag because he was in the front of the house. When asked why his Illinois State identification card, which was issued on April 23, 2010, still listed the South Bishop Street address as his residence, he answered he "never changed it. It's the same one that I got issued prior. It was actually a renewal that was expired." He kept the South Bishop Street address as his mailing address. He agreed that he was issued a new driver's license on November 10, 2010, with South Bishop Street as his address despite not living there. He also admitted that he received a traffic citation on January 1, 2010, which listed his address as South Bishop Street. He also admitted his firearm owner's identification card lists the home on South Bishop Street as his address.

¶ 18    After closing arguments, the circuit court found defendant guilty of possession of cannabis. The court noted that both police officers testified consistently. The court described the State's account of the possession and recovery of the cannabis as "clear," but found defendant and his sister incredible.

¶ 19    Defendant filed a motion for a new trial, which the circuit court denied. On February 11, 2013, the circuit court sentenced defendant to 12 months' probation. The circuit court awarded defendant two days' credit for time served in presentence custody and assessed defendant $1,189 for various fines and costs. On March 6, 2013, defendant appealed.

¶ 20                                    ANALYSIS

¶ 21    Before this court, defendant challenges the sufficiency of the evidence used against him, argues that he received ineffective assistance of trial counsel, and contends that he is entitled to

reduce the fines imposed against him by the credit he received for the time he served in presentence custody.

¶ 22                                  Sufficiency of the Evidence

¶ 23    Defendant first argues that the State failed to prove beyond a reasonable doubt that he possessed the cannabis at issue because his finding of guilt was based on the uncorroborated testimony of a single police officer, Officer Guzman. According to defendant, Officer Guzman's testimony was highly improbable, incredible, and contrary to human experience. Defendant questions Officer Guzman's ability to enter through the front door of the residence, announce his office, and make his way to the back of the house to see defendant drop the plastic bag. Defendant also points out that he did not live at the address where the cannabis was found and the search warrant named another individual. Defendant argues throughout his brief that Officer Guzman saw defendant "drop" the bag that contained the cannabis later found by Officer Guzman. The State responds that the evidence it presented proved beyond a reasonable doubt that defendant possessed the cannabis found by the police.

¶ 24    The due process clause of the fourteenth amendment to the United States Constitution ensures that an accused defendant is not convicted of a crime "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *People v. Carpenter*, 228 Ill. 2d 250, 264 (2008). It is not, however, the function of this court to retry a defendant when reviewing whether the evidence at trial was sufficient to sustain a conviction. *People v. Hall*, 194 Ill. 2d 305, 329-30 (2000). Rather, our review is focused on "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Baskerville*, 2012 IL 111056, ¶ 31. "The requirement that a defendant's guilt be proved beyond a reasonable doubt does not mean that inferences flowing from the evidence should be disregarded." *People v. Schmalz*, 194 Ill. 2d 75, 81 (2000).

¶ 25    The trier of fact is responsible for determining a witness's credibility and the weight to be given to a witness's testimony, as well as drawing any reasonable inferences from the evidence. *People v. Jimerson*, 127 Ill. 2d 12, 43 (1989). Therefore, we will not substitute our judgment for that of the trier of fact when considering such matters. *People v. Brown*, 2013 IL 114196, ¶ 48. The findings of the trier of fact are given great weight because it saw and heard the witnesses. *People v. Wheeler*, 226 Ill. 2d 92, 114-15 (2007). Although the trier of fact is accorded great deference, its decision is not binding or conclusive. *Id.* at 115. Reversal of a conviction is necessary "where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt." *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001).

¶ 26    In order to find defendant guilty of possession of cannabis, the State had to prove beyond a reasonable doubt that defendant knowingly possessed the cannabis found by the police. 720 ILCS 550/4 (West 2010). Where, as in this case, a defendant is found to possess more than 30 grams of any substance containing cannabis, but less than 500 grams, and it is the defendant's first offense, it is a Class 4 felony. 720 ILCS 550/4(d) (West 2010). The element of possession may be shown by actual possession or constructive possession. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). Actual possession, however, is not shown by mere proximity to the illicit material. *Schmalz*, 194 Ill. 2d at 81. "Actual possession is the exercise by the defendant of

present personal dominion over the illicit material and exists when a person exercises immediate and exclusive dominion or control over the illicit material, but does not require present personal touching of the illicit material." *Givens*, 237 Ill. 2d at 335. "Where possession has been shown, an inference of guilty knowledge can be drawn from the surrounding facts and circumstances." *Schmalz*, 194 Ill. 2d at 82. This court has held that "[t]he act of dominion may be that defendant had the contraband on his person, that he tried to conceal it, or that he was seen throwing it away." *People v. Ray*, 232 Ill. App. 3d 459, 461 (1992). It is the role of the trier of fact to determine the factual question of knowledge and possession or control. *Schmalz*, 194 Ill. 2d at 81. Circumstantial evidence may be used to satisfy the elements of possession. *People v. Eghan*, 344 Ill. App. 3d 301, 307 (2003).

¶ 27    After viewing the evidence in the light most favorable to the State, we hold that a rational trier of fact could have found that defendant possessed the cannabis recovered by the police in this case. Specifically, Officer Guzman testified that he instructed defendant to show his hands and to come forward. Officer Guzman testified that defendant complied, but only "after throwing an item and closing the door" to the bedroom. That item was the plastic bag, which Officer Guzman subsequently recovered and found the cannabis at issue here. The plastic bag was the only one in the room where Officer Guzman found it. He later testified that he saw the bag in defendant's hand. Officer Guzman estimated that it took "[a]pproximately less than a minute" for him to enter the house before he encountered defendant. The act of possession is shown when a person exercises dominion over illicit material. *Givens*, 237 Ill. 2d at 335. This court has held that "[t]he act of dominion may be that defendant had the contraband on his person, that he tried to conceal it, or that he was seen throwing it away." *Ray*, 232 Ill. App. 3d at 461. Accordingly, the State in this case showed that defendant had possession of the cannabis through Officer Guzman's testimony that he witnessed defendant throwing a bag containing cannabis from his hand.

¶ 28    Furthermore, "[w]here possession has been shown, an inference of guilty knowledge can be drawn from the surrounding facts and circumstances." *Schmalz*, 194 Ill. 2d at 82. The facts and circumstances of this case are that defendant threw the bag and shut the door before complying with Officer Guzman's instructions to show his hands and to step toward him. The reasonable inference flowing from these facts and circumstances is that defendant disposed of the bag containing the cannabis, by throwing it, when he saw Officer Guzman and heard his instructions.

¶ 29    We note that throughout defendant's brief, he refers to the State's evidence as showing that he dropped the plastic bag. We disagree with defendant's characterization of the facts of this case because Officer Guzman clearly testified that defendant threw the bag, as opposed to dropping it, and that defendant only complied with his orders after throwing the bag and shutting the door. Officer Guzman testified, during the State's direct examination, as follows:

    "Q. What did defendant do?

    A. The defendant was observed in the rear bedroom of the location. He was instructed to show his hands and to step towards myself.

    Q. Did he do that?

    A. *Yes. He did that after throwing an item and closing the door to the location.*" (Emphasis added.)

¶ 30    We find this distinction important because dropping a bag in response to a police instruction is much different than what defendant did here, which was to wait to comply with a police instruction until after he threw a bag into a room and shut the door. The act of dropping is more of a passive action while the act of throwing is an affirmative move to distance an object from oneself. Applied to the facts here, it gives rise to the inference that defendant attempted to distance himself from the bag containing the cannabis by throwing it into a room and shutting the door to that room. Accordingly, we hold that State presented sufficient evidence to sustain defendant's conviction for possession of cannabis.

¶ 31                              Ineffective Assistance of Counsel

¶ 32    Defendant next argues he was deprived of the effective assistance of counsel because his counsel failed to file a motion to suppress the cannabis the police seized because the police did not have probable cause to search the plastic bag containing the cannabis, he did not abandon the bag because he acted in response to a directive from Officer Guzman, and because the cannabis was not in plain view. In response, the State argues that a motion to suppress would have been futile because the police had probable cause to search the bag containing cannabis and because defendant abandoned the bag.

¶ 33    A criminal defendant's right to the effective assistance of counsel is a constitutional right reviewed pursuant to the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), as adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504 (1984). *People v. Domagala*, 2013 IL 113688, ¶ 36. To demonstrate ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that he was prejudiced by the deficient performance of his counsel. *Id.* Failed strategic decisions do not establish the ineffectiveness of counsel. *People v. Fuller*, 205 Ill. 2d 308, 331 (2002). "In order to establish prejudice resulting from failure to file a motion to suppress, a defendant must show a reasonable probability that: (1) the motion would have been granted, and (2) the outcome of the trial would have been different had the evidence been suppressed." *People v. Patterson*, 217 Ill. 2d 407, 438 (2005). This court, however, has held that where a defendant's claim of ineffective assistance of counsel requires consideration of matters outside of the record, such a claim is more appropriately addressed on collateral review. *People v. Kunze*, 193 Ill. App. 3d 708, 725-26 (1990). This allows a better record to be developed and the attorney-client privilege does not apply. *Id.* at 726.

¶ 34    After reviewing the record here, we decline to consider defendant's claim of ineffective assistance of trial counsel because the record is devoid of evidence that would allow this court to adjudicate whether trial counsel's decision to not file a motion to suppress was strategic, whether the motion would have been granted, or whether Officer Guzman acted lawfully under the circumstances. In *People v. Durgan*, the Fourth District of this court declined to review a defendant's claim of ineffective assistance of counsel based on similar circumstances, *i.e.*, trial counsel's failure to file a motion to suppress evidence from the defendant's arrest. *People v. Durgan*, 346 Ill. App. 3d 1121, 1141-43 (2004). The *Durgan* court made note of an important distinction between the State's actions attacking a motion to suppress and its actions at trial. *Id.* at 1142-43. Specifically, the court reasoned:

        "[W]hether defendant suffered prejudice for his trial counsel's failure to move to suppress evidence arising from defendant's arrest depends on the likelihood of the motion's success. However, the record is devoid of factual findings on the issues

pertinent to defendant's claim. Because the record contains nothing to review with respect to the appropriateness of the police officers' actions surrounding defendant's arrest, we decline to consider defendant's argument. In so doing, we note that the argument defendant makes is almost never appropriate on direct appeal because absent a motion to suppress, it is highly unlikely that the State would garner its resources to prove the propriety of the officers' actions. Thus, in such cases, we cannot be certain that the record contains all of the evidence that could have been presented on the issue." *Id.*

We agree with the above reasoning and decline to review defendant's claim of ineffective assistance of counsel. Although we decline to review defendant's claim here, we note that defendant may, if he so chooses, raise his claim of ineffective assistance of counsel based on his trial counsel's failure to file a motion to suppress the cannabis at issue here in a proceeding under the Post-Conviction Hearing Act. See 725 ILCS 5/122-1 to 122-7 (West 2010).

¶ 35                                 Credit For Time Served

¶ 36        Defendant's final claim of error is that the circuit court failed to apply a credit for the amount of time he served in presentence custody against the fines the court imposed on him. Defendant argues that his two days in presentence custody entitle him to $10 of credit to be applied against his fines totaling $1,189. 725 ILCS 5/110-14 (West 2012). He asks that this court modify the monetary judgment against him to reduce his fines and fees to a total of $1,179. The State agrees with defendant. We agree with the parties and modify the monetary judgment to reflect fines totaling $1,179.

¶ 37                                    CONCLUSION

¶ 38        The judgment of the circuit court of Cook County is affirmed as modified.

¶ 39        Affirmed as modified.