# Illinois Official Reports

## Supreme Court

---

**People v. Veach, 2017 IL 120649**

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. BLACKIE VEACH, Appellant. |
| Docket No. | 120649 |
| Filed | May 18, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Coles County, the Hon. Mitchell K. Schick, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Thomas A. Lilien, Deputy Defender, and Jack Hildebrand, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Daniel B. Lewin, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices          JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Thomas, Garman, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1     In this appeal, we examine the propriety of a growing practice in the appellate court of declining to consider ineffective assistance of counsel claims on direct review. A Coles County jury found defendant, Blackie Veach, guilty of two counts of attempted murder and rejected defendant's theory that someone else committed the crimes. On direct review, defendant argued that his trial counsel was ineffective for stipulating to the admission of recorded statements of the State's witnesses. A majority of the appellate court affirmed, holding that the record was inadequate to resolve the issue. The majority encouraged defendant to raise the issue in a postconviction petition. 2016 IL App (4th) 130888, ¶¶ 89, 92. We allowed defendant's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Mar. 15, 2016).

¶ 2     We hold that the record in this case was sufficient for the appellate court to consider defendant's ineffective assistance of counsel claim on direct review and, therefore, the appellate court erred in declining to consider the claim. We reverse the judgment of the appellate court and remand the cause to the appellate court for further review.

¶ 3                              BACKGROUND

¶ 4     The issue in this case concerns defendant's claim that his trial counsel provided ineffective assistance by stipulating to the admission of recorded statements of the State's key witnesses, Johnny Price, Matthew Price, and Renee Strohl. Accordingly, we limit the background of this case to those witnesses and the facts necessary to an understanding of defendant's claim.

¶ 5     Defendant was charged with the attempted murders of his longtime friends, Matthew Price and Renee Strohl. He was also charged with the lesser-included offenses of aggravated battery. The charges arose from a December 12, 2012, incident at Matthew and Renee's home in Charleston, when defendant allegedly cut Matthew's and Renee's throats with a knife.

¶ 6     At defendant's jury trial, Johnny Price, Matthew's cousin, testified that on December 12, 2012, he went to Matthew and Renee's house. While there, he and Matthew drank alcohol and smoked synthetic marijuana. Renee also drank alcohol.

¶ 7     Johnny testified that Matthew and Renee went into the bathroom together. When they came out, they sat together. Shortly thereafter, Johnny saw defendant cut Matthew's throat with a knife, and then defendant cut Renee's throat. Johnny ran from the house when Matthew pushed defendant onto an adjacent mattress. Johnny thought defendant was chasing him so he ran to a nearby Dairy Queen and called his grandmother. The police came to the

Dairy Queen and took Johnny to the station where he gave a videotaped statement. Johnny was impeached with a prior conviction for retail theft.

¶ 8 Johnny's videotaped interview was admitted by stipulation of the parties. The State offered no reason it wanted to admit the videotape. Defense counsel wanted to use portions of the videotape for impeachment and stated that by using the videotape for impeachment, he understood he was "going to open the door" to admitting the "whole video." When the State moved to play the entire recording, defense counsel responded, "The entire interview?" The State responded, "I believe under the doctrine of completeness the—everything needs to be seen." Defense counsel responded that he had no objection to admitting the videotape in its entirety as long as the defense would be permitted "to call rebuttal."

¶ 9 The videotape was played for the jury in its entirety. In that recording, Johnny described the attack six different times, consistently implicating defendant. Johnny also stated that defendant was involved in a street gang and had previously threatened him. Various parts of Johnny's videotaped statement, however, contradicted his trial testimony.

¶ 10 Matthew Price testified that he was in a two-year relationship with Renee Strohl. He and Renee lived together, and defendant, who had been Matthew's best friend, often stayed with them. In the summer of 2012, Matthew heard that defendant was having an affair with Renee, but Matthew did not believe defendant "would do that."

¶ 11 Matthew further testified that on the day of the incident, December 12, 2012, he and Renee were at their home with Johnny and defendant. Matthew and Renee went into the bathroom and had sex. When they came out of the bathroom, defendant was standing at the bathroom door. Defendant complained, saying that was "bogus." Matthew and Renee sat back down together. Defendant then asked to speak with Matthew on the back porch.

¶ 12 On the back porch, defendant said that he had to put a "hit" on Renee because she had beaten up defendant's friend, Debbie Davis. He told defendant to "just let it go" because Renee had been charged with an aggravated battery and because it was "just a female fight." Defendant agreed to drop the issue.

¶ 13 Matthew and defendant then went back inside, and Matthew sat next to Renee. Defendant sat behind them and began talking to Matthew. Defendant next said: "You're not my brother. You never had been." Matthew then felt "warmness running down his neck." Matthew put his hand up to his neck and felt his hand being cut. Matthew yelled, "call 911." Matthew stood up and saw defendant cutting Renee's neck with a knife. Matthew then punched defendant in the face. Defendant dropped the knife and fell back onto an adjacent bed. Matthew was going to start hitting defendant, but Johnny ran between them and knocked Matthew off balance. Johnny ran out the back door, and defendant followed him.

¶ 14 Matthew gave an audio-recorded statement to police after the incident. The parties stipulated to the admission of Matthew's audio-recorded statement and to its publication to the jury. It revealed inconsistencies between Matthew's recorded account of the incident and his trial testimony. In the recording, Matthew told four different versions of defendant's alleged knife attack. Matthew asserted that defendant's motive was retaliation for an earlier fight between Renee and Debbie Davis. Matthew also described defendant as "a real big alcoholic, and that's all he does now is drink."

¶ 15 On cross-examination, Matthew acknowledged that less than two weeks after the incident, on December 23, 2012, Renee accused him of "cheating" and she "put her hands on

- 3 -

me [and] got me locked up for domestic." Matthew denied holding a knife to Renee's throat. Matthew also denied threatening to commit suicide using a knife but admitted he had threatened suicide by hanging himself. Matthew was impeached with three prior felony convictions.

¶ 16 Renee Strohl testified that she was in a relationship with Matthew from March 2011 to February 2013. She and Matthew lived together. In the summer of 2012, Matthew began repeatedly accusing her of having an affair with defendant and two other men. On several occasions, Matthew held a knife on Renee and threatened to cut himself.

¶ 17 In early November 2012, Matthew forced Renee to fight Debbie Davis by threatening Renee with a gun. After the fight, Renee and defendant attempted to leave, but Matthew told them that if they left or contacted the police he would shoot them. Renee testified that she was afraid of Matthew.

¶ 18 About a month later, on December 12, 2012, Renee and Matthew were at home with Johnny and defendant. They drank alcohol, and Matthew smoked cannabis and synthetic cannabis. Several people visited them during the evening. At some point, Renee and Matthew went into the bathroom and had sex. When they came out of the bathroom, defendant was standing in front of the door, and he complained about them being in the bathroom. Renee and Matthew sat together. She was "fairly impaired" at the time but was wide awake "[f]or a few seconds, not long." Defendant sat in a folding chair behind them.

¶ 19 The next thing Renee remembered was feeling a sharp pain. She stood up and saw defendant lying nearby with Matthew standing over him. Matthew hit defendant in the face. She went to the bedroom and called 911. Renee testified that she did not know who cut her throat and that defendant and Matthew were "both there, but [defendant] has never tried to hurt me." Renee did not see Johnny in the room.

¶ 20 The next day, December 13, Renee spoke with Matthew for about 2½ hours before going to the police and giving an audio-recorded statement. By agreement, Renee's audio-recorded statement was admitted into evidence. Defense counsel asserted he had no objection to playing the recording to the jury.

¶ 21 In the recorded statement, Renee recounted the December 12 assault and implicated defendant in her attack. She made several statements that generally reflected poorly on defendant's character, including that he became violent when he consumed alcohol. Renee also claimed that Matthew told her defendant cut their throats because of her fight with Debbie Davis.

¶ 22 On cross-examination, Renee testified that less than two weeks after the incident, on December 23, 2012, Matthew was arrested after he pulled a knife on her and threatened to kill her by slitting her throat. Similarly, on January 12, 2013, Matthew threatened Renee and other people with a knife and threatened to kill himself. Renee testified that defendant had never threatened her with a knife or a gun and had never caused any harm to her. Renee was impeached with two felony convictions.

¶ 23 Defense counsel pursued three alternative theories throughout his case-in-chief: (1) Matthew attacked Renee and then slit his own throat, (2) Johnny committed the attacks, and (3) someone else committed the attacks. Counsel, however, focused primarily on the first theory in closing argument. Defense counsel called several witnesses to support the theory that someone other than defendant committed the offenses. Numerous defense witnesses

testified about Matthew's violent character and specific instances when he threatened to commit violence with a knife or gun against Renee, himself, and others.

¶ 24 The jury returned guilty verdicts on each count. The trial court denied defendant's motion for a new trial. Defendant was sentenced to consecutive sentences of 16 years for each of the two convictions for attempted murder.

¶ 25 On direct review, defendant claimed that trial counsel was ineffective for stipulating to the admission of the recorded statements of Johnny, Matthew, and Renee. A majority of the appellate court declined to address defendant's claim, holding that the record was not adequate for the court to resolve the issue and encouraged defendant to raise the issue in a postconviction petition. 2016 IL App (4th) 130888, ¶¶ 89, 92. This court allowed defendant's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Mar. 1, 2016).

¶ 26                                                      ANALYSIS

¶ 27 In his petition for leave to appeal, defendant asked this court to address whether the appellate court erroneously refused to consider his ineffective assistance of counsel claim, forcing him to pursue the claim through postconviction proceedings. Before the appellate court, defendant claimed that his trial counsel provided ineffective assistance by stipulating to the admission of recorded statements of the State's key witnesses, Johnny, Matthew, and Renee.

¶ 28 Before this court, the State concedes that the appellate court should have addressed defendant's ineffective assistance of counsel claim. The State argues, however, that defense counsel's decision to stipulate to the witnesses' recorded statements was not prejudicial nor was it deficient performance.

¶ 29 A criminal defendant has a constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. A claim alleging ineffective assistance of counsel is governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Domagala*, 2013 IL 113688, ¶ 36 (citing *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting the *Strickland* standard)).

¶ 30 "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland*, 466 U.S. at 687). Specifically, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland*, 466 U.S. at 694). "A 'reasonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.' " *People v. Simpson*, 2015 IL 116512, ¶ 35 (quoting *Strickland*, 466 U.S. at 694). "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *Simpson*, 2015 IL 116512, ¶ 35 (citing *People v. Patterson*, 192 Ill. 2d 93, 107 (2000)).

¶ 31 We begin our review by addressing whether the appellate court majority correctly declined to consider defendant's ineffective assistance of counsel claim on direct review and, instead, encouraged defendant to raise the claim in a postconviction petition. The appellate court majority held that it could not rule on the issue because it would require development

of a factual record. 2016 IL App (4th) 130888, ¶¶ 89, 92. The majority also engaged in a lengthy discussion of the practice of deferring judgment in such cases, citing *People v. Kunze*, 193 Ill. App. 3d 708 (1990), *People v. Kirklin*, 2015 IL App (1st) 131420, *People v. Clark*, 406 Ill. App. 3d 622 (2010), and *People v. Parker*, 344 Ill. App. 3d 728 (2003). The majority believed that *Massaro v. United States*, 538 U.S. 500 (2003), and *People v. Bew*, 228 Ill. 2d 122 (2008), implied that waiting for collateral review of matters of ineffective assistance was "almost always" preferable. 2016 IL App (4th) 130888, ¶¶ 69-70.

¶ 32    The appellate court majority described three categories of review for ineffective assistance claims and directed the circumstances when deferral for collateral review is preferable. The first category is: "Category A cases: direct appeals raising ineffective assistance of counsel that the appellate court should decline to address." 2016 IL App (4th) 130888, ¶ 72. According to the appellate court, Category A cases are "direct appeals" when "for various reasons, the appellate court concludes that the record on appeal is not adequate to resolve the defendant's contention" and comprise a "very large percentage of the direct appeals raising ineffective assistance of counsel." 2016 IL App (4th) 130888, ¶ 74. The appellate court determined that the "prudent and judicious course" in Category A cases is to "(1) decline to address the issue (while explaining its reason for doing so), (2) affirm the trial court's judgment, and (3) indicate that the defendant may raise the ineffective-assistance-of-counsel claim in a postconviction petition." 2016 IL App (4th) 130888, ¶ 75.

¶ 33    The second suggested category of review for ineffective assistance of counsel claims described by the appellate court is "Category B cases: direct appeals raising ineffective assistance of counsel that the appellate court may address because they are clearly groundless" and the trial court record would not matter in such a case "because the defendant's claim has no merit." 2016 IL App (4th) 130888, ¶¶ 72, 82. The appellate court described Category B cases as "rare occasions." 2016 IL App (4th) 130888, ¶ 82.

¶ 34    Finally the appellate court suggested a third category of review for ineffective assistance claims as "Category C cases: direct appeals raising ineffective assistance of counsel that an appellate court may address because trial counsel's errors were so egregious." 2016 IL App (4th) 130888, ¶ 72. According to the appellate court, Category C cases also occur on "rare occasions" when an appellate court can determine ineffective assistance based on the trial court record and no justifiable explanation could possibly exist. 2016 IL App (4th) 130888, ¶ 85.

¶ 35    The appellate court majority categorized defendant's ineffective assistance claim in this case as a Category A appeal "raising ineffective-assistance-of-counsel claims that this court should decline to address." 2016 IL App (4th) 130888, ¶ 89. The appellate court explained:

> "That is because the record before us, like the very large percentage of other direct appeals raising this claim, is not adequate for this court to resolve it. The record contains no indication whatsoever why defense counsel agreed to the admission of the video recordings in question. To resolve defendant's claim, this court would need to guess at counsel's motivation." 2016 IL App (4th) 130888, ¶ 89.

The majority encouraged defendant to raise his claim in a postconviction petition and affirmed the judgment of the trial court. 2016 IL App (4th) 130888, ¶ 92.

¶ 36    The dissenting justice opined that deferring ineffective assistance claims for collateral review is never preferable and that the appellate majority did not take into account the issue

of forfeiture that litigants would experience if they were required to defer their claim. The dissent believed the record in this case was sufficient for review, that defendant's counsel was ineffective for stipulating to the admission of the statements in their entirety, and that defendant was prejudiced by his counsel's ineffective performance. 2016 IL App (4th) 130888, ¶¶ 96-150 (Appleton, J., dissenting).

¶ 37     We note that since the appellate court reached its decision in this case, our appellate court has repeatedly applied this novel three-part classification of ineffective assistance of counsel claims. See *People v. Heller*, 2017 IL App (4th) 140658; *People v. Austin*, 2017 IL App (4th) 141013-U; *In re Logan F.*, 2017 IL App (4th) 160695-U; *People v. Fenton*, 2017 IL App (5th) 140052-U; *People v. Johnson*, 2016 IL App (4th) 150004; *People v. Fellers*, 2016 IL App (4th) 140486; *People v. Cline*, 2016 IL App (4th) 140379-U; *People v. Sparks*, 2016 IL App (5th) 130229-U; *People v. Reyes*, 2016 IL App (1st) 150148-U; *People v. Smith*, 2016 IL App (5th) 140060-U; *People v. Wilson*, 2016 IL App (4th) 140808-U; *People v. Stillwell*, 2016 IL App (4th) 140753-U; *People v. Hansbrough*, 2016 IL App (4th) 141032-U.

¶ 38     It appears that the primary basis for the appellate court majority's decision here is *People v. Kunze*, 193 Ill. App. 3d 708 (1990). In relevant part, *Kunze* held:

> "Where, as here, consideration of matters outside of the record is required in order to adjudicate the issues presented for review, the defendant's contentions are more appropriately addressed in proceedings on a petition for post-conviction relief. (Ill. Rev. Stat. 1987, ch. 38, pars. 122-1 through 122-8.) We therefore decline to adjudicate in this direct appeal Kunze's contentions concerning the alleged incompetence of Kunze's trial counsel. An adjudication of a claim of ineffective assistance of counsel is better made in proceedings on a petition for post-conviction relief, when a complete record can be made and the attorney-client privilege no longer applies." *Kunze*, 193 Ill. App. 3d at 725-26.

¶ 39     We note, however, that the appellate court in *Kunze* did not cite any authority to support its holding that ineffective assistance of counsel claims are better made in postconviction proceedings. Nevertheless, our appellate court has widely followed *Kunze* in refusing to consider ineffective assistance of counsel claims on direct review. See *In re Alonzo O.*, 2015 IL App (4th) 150308; *People v. Taylor*, 2015 IL App (4th) 140060; *People v. Evans*, 2015 IL App (1st) 130991; *People v. Brothers*, 2015 IL App (4th) 130644; *People v. Sharp*, 2015 IL App (1st) 130438; *People v. Pelo*, 404 Ill. App. 3d 839 (2010); *People v. Millsap*, 374 Ill. App. 3d 857 (2007); *People v. Evans*, 369 Ill. App. 3d 366 (2006); *People v. Durgan*, 346 Ill. App. 3d 1121 (2004); *People v. Cameron*, 336 Ill. App. 3d 548 (2003); *People v. Neylon*, 327 Ill. App. 3d 300 (2002); *People v. Calvert*, 326 Ill. App. 3d 414 (2001); *People v. Holloman*, 304 Ill. App. 3d 177 (1999); *People v. Negron*, 297 Ill. App. 3d 519 (1998); *People v. Palacio*, 240 Ill. App. 3d 1078 (1993); *People v. Morris*, 229 Ill. App. 3d 144 (1992); *People v. Fenton*, 2017 IL App (5th) 140052-U; *People v. Jake*, 2016 IL App (4th) 140124-U; *People v. Clark*, 2016 IL App (4th) 140058-U; *People v. McSpadden*, 2015 IL App (4th) 140814-U; *People v. Hayes*, 2015 IL App (4th) 140162-U; *People v. Wilder*, 2015 IL App (4th) 140004-U; *People v. Emeka*, 2015 IL App (4th) 130929-U; *People v. Thomason*, 2015 IL App (4th) 130875-U; *People v. Townsell*, 2015 IL App (4th) 130854-U; *People v. Hall*, 2015 IL App (4th) 130780-U; *People v. Lockett*, 2015 IL App (4th) 120440-U; *People v. Lowery*, 2013 IL App (4th) 120514-U; *In re Commitment of Tittlebach*, 2013 IL App (2d)

120463-U; *People v. Shaffer*, 2013 IL App (4th) 120239-U; *People v. Fieldman*, 2013 IL App (4th) 111065-U; *People v. Flores*, 2013 IL App (4th) 110968-U; *People v. Pogue*, 2012 IL App (4th) 110284-U; *People v. Nelson*, 2011 IL App (4th) 100096-U; *People v. Roberson*, 406 Ill. App. 3d 1224 (2011) (unpublished order under Supreme Court Rule 23) (table). Considering the lack of authority, *Kunze*'s broad holding that ineffective assistance of counsel claims are "better made" in collateral proceedings is necessarily suspect.

¶ 40    The appellate court majority here also believed that *Massaro v. United States*, 538 U.S. 500 (2003), and *People v. Bew*, 228 Ill. 2d 122 (2008), required waiting for collateral review of matters of ineffective assistance of trial counsel. We disagree.

¶ 41    In *Massaro*, the United States Supreme Court considered whether failure to raise an ineffective assistance of counsel claim on direct appeal results in procedural default. The Court began by recognizing "the general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro*, 538 U.S. at 504. The Court recognized that this general procedural default rule "is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro*, 538 U.S. at 504. The Court concluded that "requiring a criminal defendant to bring ineffective-assistance-of-counsel claims on direct appeal does not promote these objectives." *Massaro*, 538 U.S. at 504.

¶ 42    In *Massaro*, the Court recognized that " '[r]ules of procedure should be designed to induce litigants to present their contentions to the right tribunal at the right time.' " *Massaro*, 538 U.S. at 504 (quoting *Guinan v. United States*, 6 F.3d 468, 474 (7th Cir. 1993) (Easterbrook, J., concurring)). The Court noted that "[a]pplying the usual procedural-default rule to ineffective-assistance claims would have the opposite effect, creating the risk that defendants would feel compelled to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Massaro*, 538 U.S. at 504. Thus, the Court rejected a Second Circuit Court of Appeals rule that required defendants to bring claims for ineffective assistance on direct review or forfeit the claim. The Court reasoned that "[w]hen an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." *Massaro*, 538 U.S. at 504-05. The Court further reasoned that in a collateral proceeding:

> "the defendant 'has a full opportunity to prove facts establishing ineffectiveness of counsel, the government has a full opportunity to present evidence to the contrary, the district court hears spoken words we can see only in print and sees expressions we will never see, and a factual record bearing precisely on the issue is created' " *Massaro*, 538 U.S. at 506 (quoting *United States v. Griffin*, 699 F.2d 1102, 1109 (11th Cir. 1983)).

¶ 43    In recognizing a preference for collateral review for deciding ineffective assistance claims, the Court expressly stated:

> "We do not hold that ineffective-assistance claims must be reserved for collateral review. There may be cases in which trial counsel's ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal. There may be instances, too, when obvious deficiencies in

- 8 -

representation will be addressed by an appellate court *sua sponte*." *Massaro*, 538 U.S. at 508.

¶ 44    In *Bew*, 228 Ill. 2d 122, this court considered whether defense counsel was ineffective for failure to file a motion to suppress. This court discussed the United States Supreme Court's decision in *Massaro*, 538 U.S. 500. Relying on *Massaro*, this court held that the record in *Bew* was insufficient to address the issue on direct appeal and concluded:

> "Therefore, even though we find that defendant has, on this record, failed to prove ineffective assistance of counsel, we note that defendant may raise these alternative grounds for suppression under the Post-Conviction Hearing Act [citation]. This disposition allows both defendant and the State an opportunity to develop a factual record bearing precisely on the issue." (Internal quotation marks omitted.) *Bew*, 228 Ill. 2d at 135.

¶ 45    While this court in *Bew* followed the United States Supreme Court in recognizing a preference for collateral review for deciding claims of ineffective assistance claims in some situations, we did not hold that ineffective assistance of counsel claims are always better suited to collateral proceedings.

¶ 46    In our view, ineffective assistance of counsel claims may sometimes be better suited to collateral proceedings but only when the record is incomplete or inadequate for resolving the claim. The reason is that in Illinois, defendants are required to raise ineffective assistance of counsel claims on direct review if apparent on the record. See *People v. Kokoraleis*, 159 Ill. 2d 325, 328 (1994). In *Kokoraleis*, this court stated:

> "A post-conviction petition offers but a collateral attack remedy. The attendant proceeding is not a substitute for, or an addendum to, direct appeal. Accordingly, principles of *res judicata* and procedural default have long been recognized to preclude consideration of claims that were or could have been earlier raised. [Citation.] An ineffective assistance of counsel claim permits no wholesale departure from those considerations." *Kokoraleis*, 159 Ill. 2d at 328.

¶ 47    Thus, in Illinois, a defendant must generally raise a constitutional claim alleging ineffective assistance of counsel on direct review or risk forfeiting the claim. *People v. Tate*, 2012 IL 112214, ¶ 14. Moreover, issues that could have been raised and considered on direct review are deemed procedurally defaulted. *People v. Ligon*, 239 Ill. 2d 94, 103 (2010). It is not the function of collateral review to consider claims that could have been presented on direct review. *People v. Thomas*, 38 Ill. 2d 321, 323 (1967). Procedural default does not, however, preclude a defendant from raising an issue on collateral review that depended upon facts not found in the record. *Thomas*, 38 Ill. 2d at 323-24.

¶ 48    For these reasons, we reject the practice of our appellate court in applying a broad-sweeping "categorical approach" in determining whether to consider ineffective assistance of counsel claims on direct review. Instead, reviewing courts in Illinois should carefully consider each ineffective assistance of counsel claim on a case-by-case basis.

¶ 49    Here, the appellate court majority determined that the record

> "[was] not adequate for this court to resolve [defendant's ineffective assistance of counsel claim]. The record contains no indication whatsoever why defense counsel agreed to the admission of the video recordings in question. To resolve defendant's

claim, this court would need to guess at counsel's motivation." 2016 IL App (4th) 130888, ¶ 89.

¶ 50    We cannot agree with the appellate court majority's assessment of the record. In fact, we agree with the parties that the record in this case was sufficient to resolve defendant's ineffective assistance of counsel claim on direct review.

¶ 51    The record in this case contains defense counsel's reason for stipulating to the admission of the recorded statements. Specifically, defense counsel indicated on the record that he wanted to use parts of the recordings for impeachment purposes. Trial counsel stated on the record his belief that use of the recordings for impeachment opened the door for the State to admit the bad character evidence and prior consistent statements. When defense counsel questioned why the "whole video" needed to be played for the jury, counsel acquiesced to the State's response that "under the doctrine of completeness the—everything needs to be seen." The question remains on whether this decision constitutes a viable claim under *Strickland*. We determine, however, that the appellate court majority erroneously concluded that the record in this case was insufficient to resolve defendant's ineffective assistance of counsel claim. We remand the cause to the appellate court for its initial consideration of that claim. See *In re D.L.H.*, 2015 IL 117341, ¶ 81 (remanding cause to appellate court to consider claims of error previously raised but not decided that were necessary to a proper disposition of the case).

¶ 52                                    CONCLUSION

¶ 53    For the foregoing reasons we reverse the judgment of the appellate court and remand the cause with directions for the appellate court to review the merits of defendant's ineffective assistance of counsel claim.

¶ 54    Reversed and remanded.