**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190010-U

Order filed July 19, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0010 Circuit No. 15-CF-551 |
| BRANDON MICHAEL JOHNSON, | ) ) ) | |
| Defendant-Appellant. | ) ) | Honorable John P. Vespa, Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Daugherity and Wright concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defense counsel did not render ineffective assistance by failing to subpoena two witnesses for defendant's trial.

¶ 2     Defendant, Brandon Michael Johnson, appeals following his conviction for unlawful possession of a weapon by a felon (UPWF). He contends that he received ineffective assistance of counsel where defense counsel failed to subpoena two witnesses, who subsequently failed to appear on the day of trial, or to otherwise seek a continuance of the trial. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          The State charged defendant via information with UPWF (720 ILCS 5/24-1.1(a) (West 2014)). After initially pleading guilty to the charge, defendant withdrew his plea and proceeded to a jury trial. While this first jury trial would ultimately end in a hung jury and a mistrial, the proceedings therein are relevant to the instant appeal.

¶ 5          The evidence introduced at defendant's first trial tended to show that police executed a search warrant at a Peoria residence on August 13, 2015. The search uncovered two rifles underneath a bed in an attic bedroom of the residence. The attic also contained a birth certificate for defendant as well as a one-year-old water bill addressed to defendant at that residence.

¶ 6          The residence in question was under surveillance prior to the execution of the search warrant. Defendant was observed leaving the residence with two other individuals; the group entered a vehicle and drove away. When the vehicle stopped in a parking lot, defendant was detained. Defendant was informed of the search warrant and the imminent search.

¶ 7          Police interviewed defendant at the Peoria Police Department. Defendant informed the police that he had purchased the rifles found in the attic approximately three weeks earlier. He stated that he needed the guns for his own protection. The State entered into evidence a certified copy of defendant's prior conviction for burglary.

¶ 8          Defendant called Pierre Coleman as his sole witness. Coleman testified that he was with defendant when he was arrested. Coleman was with defendant when they left the residence, which Coleman referred to as defendant's mother's house. The police approached Coleman and defendant with guns drawn. The police told Coleman that they were not interested in him but wanted defendant for a murder.

¶ 9    On cross-examination, Coleman reiterated that the police were "focusing on" defendant "for a murder." At the close of cross-examination, and not in response to any question from the State, Coleman said: "They even come out to Sterling Towers telling me I ain't even gotta come to this."

¶ 10    On redirect, defense counsel questioned Coleman regarding that statement over a State's objection concerning the scope of redirect. Coleman explained that a State's Attorney investigator came to his building to ask about defendant, then told him "you don't even have to come to court."

The State called State's Attorney investigator Michael Hirsch in rebuttal. Hirsch recalled speaking to Coleman in the course of his investigation. The State asked Hirsch if he "ever [told] Mr. Coleman that he did not have to come to court." Hirsch responded: "No." On cross-examination, defense counsel asked Hirsch: "Did you inform [Coleman] that he did not have to come to court unless he was subpoenaed?" Hirsch responded: "Yes."

¶ 11    In his closing argument, defense counsel emphasized the presumption of innocence and the State's burden. Counsel argued that the evidence that defendant lived in the residence was scant, noting that multiple people were seen leaving the residence, the water bill was old, and Coleman testified that the house belonged to defendant's mother, such that the presence of his birth certificate there would not be unexpected. Counsel also argued that the State failed to prove immediate and exclusive control over the attic. Finally, counsel argued that defendant may have stated the guns belonged to him because he was scared that the police were investigating him for murder.

¶ 12    After 1 hour and 15 minutes of deliberations, the jury delivered a note stating that it was deadlocked. The court called the jury into the courtroom and delivered the *Prim* instruction. See

*People v. Prim*, 53 Ill. 2d 62, 75 (1972). An hour later, when the jury indicated it remained deadlocked, the court declared a hung jury and a mistrial.

¶ 13      Defendant's second jury trial commenced 54 days later. Defense counsel announced that he was not ready for trial because Coleman and Demeris Lindsay were not present.[1] Defense counsel stated that he had not subpoenaed those witnesses. Citing the lack of subpoenas, the court inquired: "the defense deemed them as not necessary witnesses; is that an unfair conclusion[?]" When defense counsel agreed that it was not an unfair conclusion, the court ordered that the trial would proceed.

¶ 14      The evidence at defendant's second trial was largely similar to that presented at his first trial, though without the testimony of Coleman. Additionally, cross-examination of Officer Todd Leach elicited that his investigation had determined that defendant and his brother were living at the residence. Leach did not know if defendant's mother or her boyfriend lived there as well. Leach also testified on cross-examination that the search warrant was related to a cannabis investigation, not a weapon or a murder investigation. Leach denied asking defendant about a murder. Leach testified that two males, including defendant's brother, were in the residence when the search warrant was executed.

¶ 15      In closing argument, defense counsel emphasized Leach's testimony. He pointed out that five total men were known to be in the residence on the day in question, defendant and the two others in the car, and the two still in the residence when the search warrant was executed. He pointed out that Leach did not know if defendant's mother or her boyfriend lived in the residence as well and argued that finding a birth certificate in a "family home" would not be unexpected.

---

[1]Defense counsel incorrectly informed the court that Lindsay had testified at the first trial.

Defense counsel also emphasized that defendant's statement to police was not recorded, in writing, or on video.

¶ 16        The jury found defendant guilty. The court sentenced defendant to a term of four years' imprisonment.

¶ 17                                           II. ANALYSIS

¶ 18        On appeal, defendant argues that he received ineffective assistance of counsel in that counsel failed to guarantee the presence of Coleman and Lindsay at his second trial by issuing subpoenas or by moving for a continuance when those witnesses were absent on the day of his second trial.

¶ 19        We analyze claims of ineffective assistance of counsel under the two-prong test originally set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on such a claim, a defendant must show that counsel rendered deficient performance and that the deficient performance prejudiced the defendant. *Id.* Prejudice is demonstrated where a defendant shows that a reasonable probability exists that, but for the deficient performance, the result of the trial would have been different. *People v. Enis*, 194 Ill. 2d 361, 376 (2000). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 669. Claims of ineffectiveness of counsel may be rejected on prejudice grounds alone, "for lack of prejudice renders irrelevant the issue of counsel's performance." *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998).

¶ 20        Initially, we reject defendant's ineffectiveness claim with respect to Lindsay due to defendant's fundamental inability to demonstrate prejudice. Unlike Coleman, Lindsay did not testify at defendant's first trial, and no offer of proof was made concerning what Lindsay's trial testimony would have been. There is no way to know what impact Lindsay's testimony would

5

have had at defendant's second trial, and thus no way to determine whether counsel's purported failure to guarantee Lindsay's presence was prejudicial. See *People v. Veach*, 2017 IL 120649, ¶ 46 (observing that ineffective assistance claims are better suited to collateral proceedings where the record is inadequate in resolving the claims). Defendant points out that Lindsay was on defense counsel's witness list and that counsel announced not ready for trial in part due to Lindsay's absence. He argues: "This shows that defense counsel believed Lindsay's testimony was material and would have affected the jury's verdict." It should be evident that defense counsel's subjective beliefs about the value of a witness's testimony is not the standard on which prejudice is determined.

¶ 21    Turning to defendant's claim with respect to Coleman, defendant first argues that the very fact of a hung jury in his first trial demonstrates prejudice stemming from Coleman's absence at the second trial. He contends:

> "This is a unique case where the prejudice is evident when comparing the two trials. The difference between the two trials shows that there is a reasonable probability that the outcome would have been different with effective assistance. *** The only major difference between the two trials was Coleman's testimony. Thus, there is more than a reasonable probability that the outcome would have been different, the outcome actually was different."

¶ 22    We reject this argument. That two different juries heard defendant's case is a difference far more significant than the testimony of any one witness. Each group of 12 individuals will inevitably weigh evidence and determine credibility in ways distinct from any other group of 12 individuals. Moreover, one jury may be more inclined to nullification than another. It is wholly

insufficient to simply state that Coleman testified in one trial and not the other, the result was different, and therefore Coleman's testimony must have made all the difference. Correlation does not equal causation.

¶ 23    Substantive review of Coleman's actual testimony further demonstrates defendant's inability to show prejudice. First, Coleman's testimony about a State's Attorney investigator, and the rebuttal testimony from Hirsch that it gave rise to, was completely unrelated to the UPWF charge. That exchange was so irrelevant that defense counsel did not even make reference to it in his closing argument at the first trial.

¶ 24    Coleman's testimony provided exactly two facts used by counsel in his closing argument. First, counsel argued that the fact that defendant was being investigated for murder may have scared him into falsely admitting to purchasing the guns. Second, counsel referenced Coleman's testimony that the residence belonged to defendant's mother, in order to argue that defendant's birth certificate being in the residence did not prove that he lived there.

¶ 25    We note that the first of counsel's arguments was not actually based on the evidence at trial. While Coleman testified that police told *him* they were investigating defendant for a murder, there was no evidence presented showing that defendant was aware of that fact. In any event, Leach testified affirmatively at the second trial that defendant was not under investigation for murder and was not told that he was. Indeed, it seems unlikely that allowing a jury to believe a defendant was suspected of a far more serious offense could be particularly helpful to that defendant.

¶ 26    Finally, defense counsel was able to raise the same argument with respect to ownership of the house even without Coleman's testimony. At the second trial, counsel elicited that defendant's brother lived at the house and that Leach did not know if defendant's mother lived there as well.

7

Thus, without objection, counsel was able to argue that defendant's birth certificate being kept in a "family house" was not indicative that defendant lived there.

¶ 27 It is unlikely that Coleman's brief testimony was of any significant impact at defendant's first trial. To the extent that Coleman's testimony was helpful to the defense's theory of the case, counsel was able to replicate his same arguments at the second trial. Accordingly, we find that no reasonable probability exists that the result of defendant's second trial would have been different had Coleman or Lindsay testified. It follows that defendant has failed to demonstrate ineffective assistance of counsel.

¶ 28 III. CONCLUSION

¶ 29 For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

¶ 30 Affirmed.